## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

THOMAS A. TRAVER and
REGINA LIST TRAVER

     Plaintiffs,
                               Case No.: 13-cv-00841-UATC-JRK

v

WELLS FARGO BANK, N.A. a/k/a
WELLS FARGO HOME MORTGAGE
and RONALD R. WOLFE and Associates,
P.L.,

     Defendants.

_____/

## FIRST AMENDED CIVIL COMPLAINT

### INTRODUCTION

     THOMAS A. TRAVER and REGINA LIST TRAVER (Traver) sue Wells Fargo Bank, N.A., a/k/a Wells Fargo Home Mortgage (Wells Fargo) and RONALD R. WOLFE and ASSOCIATES, P.L. (Wolfe P.L.) and state:

### GENERAL ALLEGATIONS

### (A) PARTIES

1.    Traver is a natural person and a citizen of the State of Florida.  Traver resides in Saint Johns County, Florida.

2.    Wells Fargo Bank N.A. is a national banking association formed under 12 U.S.C.§21 *et seq.* Wells Fargo is chartered in Sioux Falls, South Dakota and acts and operates as a mortgage lender with a principal place of business at 420 Montgomery Street, San Francisco, California 94104.

1

3.    Wells Fargo Home Mortgage is an operating unit of Wells Fargo Bank, N.A. and is located in Des Moines, Iowa.

4.    Ronald R. Wolfe and Associates, P.L. is a professional corporation formed under the laws of the State of Florida.

### (B) JURISDICTION

5.    This District Court has federal question jurisdiction pursuant to 28 U.S.C.§1331. The offer and acceptance were made through United States Bankruptcy Court by a modification order entered in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, Case No. 3:12-bk-03054-JAF, as hereafter described.

6.    This District Court also has diversity of citizenship jurisdiction pursuant to 28 U.S.C.§1332 as described in the above Paragraphs Nos. one - three. The subject matter in controversy exceeds the value of $75,000.00 as hereafter described. The former homestead residence of Traver is valued at $207,000.00 on the open market (Exhibit 10). The Travers have also lost personal property and suffered damages in the amount of $23,000.00 (Exhibit 11).

### (C) FACTUAL BACKGROUND/WELLS FARGO

7.    Over the last five years, the United States has been in a foreclosure crisis. A congressional oversight panel has recently noted that one in eight U.S. mortgages is currently in foreclosure or default.

8.    Increased foreclosures have a detrimental effect on borrowers who are at serious risk of losing their homes. Foreclosures also have a negative impact on the surrounding neighborhoods that suffer decreased property values. In addition, municipalities lose tax revenue as a result of foreclosures.

9.    On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008 and amended it on February 17, 2009, with the American Recovery and Reinvestment Act of 2009 (together, the "Act"). 12 U.S.C.§5201 *et seq.* (2009).

10.   The purpose of the Act is to grant the Secretary of the Treasury the authority to restore liquidity and stability to the financial system and ensure that such authority is used in a manner that "protects home values" and "preserves home ownership." 12 U.S.C.§5201

11.   Also, under the Troubled Asset Relief Program (TARP), the United States Government Loaned Financial Institutions nearly $700 billion in funds to address the current financial crisis. A key feature of TARP is the United States Treasury's Home Affordable Modification Program (HAMP) - a program in which Wells Fargo received incentive payments for providing mortgage loan modifications programs and services to eligible borrowers.

12.   The Act grants the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program, or TARP 12 U.S.C.§5211.  Under TARP, the Secretary may purchase or make commitments to purchase troubled assets from financial institutions.

13.   In exercising its authority to administer TARP, the Act mandates that the Secretary "shall" take into consideration the "need to help families keep their homes and to stabilize communities." 12 U.S.C.§5213(3).

14.   The Act further mandates, with regard to any assets acquired by the Secretary that are backed by residential real estate, that the Secretary "shall implement a plan that seeks to maximize assistance for homeowners" and use the Secretary's authority over servicers to encourage them to take advantage of programs to "minimize foreclosures." 12 U.S.C.§5219

15.   The Act grants authority to the Secretary of the Treasury to use credit enhancement and loan guarantees to "facilitate loan modifications to prevent avoidable foreclosure."

16.    The Act also imposes parallel mandates to implement plans to maximize assistance to homeowners and to minimize foreclosures. 12 U.S.C.§5220

17.    On February 18,2009, pursuant to the authority under the Act, the Secretary of the Treasury and the Director of the Federal Housing Finance Agency announced the Making Home Affordable Program.

18.    One aspect of this program is known as the Home Affordable Modification Program, or HAMP. It is this subprogram that is the subject of the Bankruptcy Court Modification Order based upon the offer by Wells Fargo and the acceptance by Traver.

19.    HAMP is funded by the federal government primarily with TARP funds. The Treasury Department has allocated at least $75 billion to HAMP, of which at least $50 billion is TARP money.

20.    In or around April 2009, Wells Fargo Bank, N.A. accepted $25 billion in funds from the United States Government as part of TARP, 12 U.S.C. §5211. Six months before accepting this money, Wells Fargo Home Mortgage signed a contract with the U.S. Treasury agreeing to participate in HAMP.

21.    Under HAMP, the federal government incentivizes participating servicers to enter into agreements with struggling homeowners that will make adjustments to existing mortgage obligations in order to make the monthly payments more affordable. Servicers receive $1,000.00 for each HAMP modification and an additional $500.00 for modification of yet to be delinquent loans which were in clear danger of imminent default.

22.    The industry entities that perform the actual interface with borrowers - including such tasks as payment processing, escrow maintenance, loss mitigation and foreclosure - are known as "servicers." Servicers typically act as the agents of the entities that hold mortgage loans.

Wells Fargo Home Mortgage (formerly Wachovia Mortgage FSB) is a servicer operated by Wells Fargo Bank, N.A., and its actions described herein were made as agents for the entities that hold mortgage loans.

23.   To participate in HAMP, a servicer must execute a Servicer Participation Agreement ("SPA") with the federal government.

24.   On April 13, 2009 Michael J. Heid of Wells Fargo Home Mortgage executed an SPA, thereby making Wells Fargo a participating servicer in HAMP.

25.   The SPA executed by Mr. Heid incorporates all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" issued by the Treasury, Fannie Mae or Freddie Mac, in connection with the duties of Participating Servicers.

26.   The SPA mandates that a Participating Servicer "shall perform" the activities described in the Program Documentation "for all mortgage loans it services."

27.   The Program Documentation requires Participating Servicers to evaluate all loans that are 60 or more days delinquent for HAMP modifications.  In addition, if a borrower contacts a Participating Servicer regarding a HAMP modification, the Participating Servicer must collect income and hardship information to determine if HAMP is appropriate for the borrower.

28.   A HAMP Modification consists of two stages.  First, a Participating Servicer is required to gather a borrower's financial and other relevant information and, if the borrower qualifies, offer the borrower a TPP Agreement.  Wells Fargo's form TPP Agreements require borrowers to make certain representations, provide relevant information, and make several consecutive trial payments at a revised rate designated to keep the borrower in his/ her home.

29. As a HAMP servicer, Wells Fargo entered into written TPP Agreements for temporary modifications with the Plaintiff and other eligible Wells Fargo borrowers. These TPP Agreements, which were form contracts, contained an express term requiring Wells Fargo to extend a formal offer for a permanent loan modification upon a borrower's completion of his or her respective trial period and continued compliance with the TPP Agreements' other terms.

30. Wells Fargo's TPP Agreements generally provide that Wells Fargo will extend offers for permanent modification to those homeowners who execute the TPP Agreement and fulfill the documentation and payment requirements. Hence, if a homeowner executes the TPP Agreement, complies with all documentation and representation requirements, and makes TPP monthly trial payments, the second stage of the HAMP process is triggered in which the homeowner is offered a permanent loan modification.

### (D) FACTS RELATING TO NAMED PLAINTIFF

31. Thomas A. Traver and Regina List Traver were married on July 14, 1977 and have lived together as husband and wife since that date.

32. Thomas A. Traver purchased the residential real property at 10515 West Osprey Nest Drive, Jacksonville, Florida 32257 on April 30, 1998.

33. In the state of Florida, homestead property is not alienable by the title owner of the homestead property without joinder of the wife. Consequently, Regina List Traver had an interest in the residential homestead property located at 10515 West Osprey Nest Drive, Jacksonville, Florida 32257.

34. On December 31, 2008, HSBC Bank, U.S.A. National Trust Company filed a foreclosure Complaint against the Traver real property located at 10515 West Osprey Nest Drive.

35.   In response, Thomas A. Traver filed a Chapter Thirteen Bankruptcy case on May 4, 2012 in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, Case No.: 3:12-bk-03054-JAF.   With this filing, Thomas A Traver hoped to obtain a loan modification pursuant to the HAMP program through the Federal Bankruptcy Court.

36.   On May 8, 2012, Traver filed a Motion for Referral to Mortgage Modification Mediation in the Chapter Thirteen case.  A copy of the Motion for Referral is attached as Exhibit 1.

37.   On May 18, 2012, the Federal Bankruptcy Court entered a Mortgage Modification Mediation Order directing HSBC Bank U.S.A. National Trust Company to file a creditor contact designation for the loan modification mediation.   A copy of the Bankruptcy Court's Mortgage Modification Mediation Order is attached as Exhibit 2.

38.   The Mortgage Modification Mediation Order directed the parties "to comply with this Order and to engage in the mediation process in good faith.  Failure to do so may result in the imposition of damages and sanctions." (Exhibit 2 at para 19) Aside from the mandate of the mortgage modification mediation order, the Traver/Wells Fargo Mediation Process was an extra judicial proceeding conducted outside of the Bankruptcy Court.  The modification negotiation and other processes involved a restructuring of the mortgage and note debt requirements.  Consequently, the modification mediation and process was not a "pursuit of legal remedies" by Wells Fargo against Traver because it did not involve legal action to foreclose or seek damages on the mortgage and note.  Conversely, the Travers were not seeking to avoid payments on the mortgage and note held by Wells Fargo.

39.   In the Traver Chapter Thirteen Bankruptcy, HSBC Bank, U.S.A. as Trustee filed Claim No. Six on August 31, 2012.  A copy of Claim No. Six is attached as Exhibit 3.  In Claim No. Six, Wells Fargo Bank, N.A. was listed as the servicing agent for HSBC Bank, U.S.A. as

Trustee.  Additionally, Ronald R. Wolfe and Associates, P.L. was listed as the attorney for HSBC Bank, U.S.A. as Trustee.

40.     Traver submitted a loan modification package to Wells Fargo.  Wells Fargo as servicer for the mortgage holder engaged in mortgage modification negotiations with Traver through the Traver Chapter Thirteen attorney.

41.     On March 20, 2013, Wells Fargo sent a letter to Thomas A. Traver informing him that the loan modification was approved.  A copy of the loan modification approval letter is attached as Exhibit 4.  The letter contained the same terms as the eventual Bankruptcy Court Loan Modification Approval Order (interest at 3.25%, P&I payment at $596.12).  The loan modification incorporated the HAMP program and its supplemental directives as modification terms.

42.     The Mortgage Modification Agreement submitted by Wells Fargo capitalized the arrearage of $28,076.17 and reduced the interest rate to 3.25%.  This resulted in a post-modification principle and interest payment of $596.12.  The first payment was due from Traver to Wells Fargo on April 1, 2013.

43.     Consequently, Traver filed a Motion for Approval of Modification Agreement with the Bankruptcy Court.  A copy of the Motion for Approval of Modification Agreement is attached as Exhibit 5 and contains the proposed modification terms submitted by Wells Fargo to Traver.

44.     On April 10, 2013, the Bankruptcy Court entered an Order granting Debtor's Motion for Approval of Modification Agreement (Exhibit 6).  The Order specifically stated:

> The Loan Modification supersedes the proof of Claim No. Six (6) filed by HSBC Bank, N.A. c/o of Wells Fargo Bank, N.A. and the Claim is no longer valid.

8

The Bankruptcy Court Order granting Traver's Motion for Approval of Modification had the effect of bringing the mortgage current as a consequence of the approved modification.

45.    Thereafter, Traver made all of his required monthly modification payments to Wells Fargo as servicing agent for HSBC.

46.    However, in the State Court foreclosure action, the State Court entered an Order setting the foreclosure hearing for final trial.  The Order Setting Final Trial was entered on March 7, 2013.

47.    On April 5, 2013, the State Court entered a Final Judgment of Foreclosure (Exhibit 7).

48.    On May 10, 2013, the Clerk of the Court entered a Notice of Foreclosure Sale for the Traver residential property to be held on May 28, 2013 (Exhibit 8).

49.    On May 14, 2013, Ronald R. Wolfe and Associates as attorneys for HSBC Bank U.S.A. filed a Motion to Cancel the Foreclosure Sale in the State Court (Exhibit 9).

50.    The Motion to Cancel stated in part:

> Plaintiff continues to review all loss mitigation options that may be available to resolve the instant foreclosure without proceeding to the foreclosure sale.

No mention was made of the Bankruptcy Court's Order Granting the Approval of the Modification Agreement that had previously been entered into between Traver and Wells Fargo.  In addition, the Motion was improperly titled.  The Motion should have been titled as a Fla. R. Civ. P. 1.54(b) Motion for Relief from Judgment because of excusable neglect.  Additionally, no excusable neglect or inadvertent neglect was claimed by Wolfe P.L. of the preexisting Bankruptcy Court's Order Granting the Approval of the Modification Agreement.

51.    Wolfe, P.L. had notice of the Traver Bankruptcy and the modification because Wolfe had filed Proof of Claim No. Six on behalf of HSBC Bank USA as Trustee.  Wolfe had also

received a copy of the Federal Bankruptcy Court's Modification Order.

52.   On May 16, 2013, the State Court entered an Order Denying the Motion to Cancel the Foreclosure Sale. The sale of the Traver residential property took place, and the certificate of title was issued to Blue River Homes, LLC on June 12, 2013.

53.   Blue River Homes, LLC filed a request for a Writ of Possession evicting the Travers from their residential property.

54.   On June 20, 2013, the Writ of Possession was executed. The Travers were evicted from their residential property. Since the Travers were not afforded sufficient time to remove their personal possessions/furniture, the personal possessions and furniture remain locked in the former Traver residence or have otherwise been converted by unknown parties.

55.   At the time that the Writ of Possession was executed, Travers valued the residential homestead property at 10515 West Osprey Nest Drive, Jacksonville, Florida at a market value of in excess of $207,000.00 (Exhibit 10). The Travers also valued their homestead furnishings at a market value of in excess of $ 21,000.00 (Exhibit 11)[1].

56.   The Travers have suffered damages as a result of their eviction. They have lost the equity value in their homestead residence and have lost the market value of their furniture and furnishings. In addition, the Travers have incurred expenses in moving and establishing a new residence.

**COUNT ONE**

57.   Travers sue Wells Fargo.

---

[1]Ms. Traver did not file bankruptcy with Mr. Traver. Ms. Traver had acquired a majority of the homestead furnishings through her own purchases when she was at her peak earning activity before her health declined.

58.   This is a State Law claim count based upon Wells Fargo's breach of contract.

59.   Traver realleges the General Allegations.

60.   The Wells Fargo letter of January 24, 2013 attached to the Traver Motion for Approval of
Modification Agreement (Exhibits 4, 5) constituted an offer from Wells Fargo that stated:
"We can offer your client a plan that we hope is workable to both parties. . . ." The Wells
Fargo letter of January 24, 2013 then listed the current mortgage payment terms and the
proposed mortgage payment terms. The Wells Fargo letter also stated : ". . . The next step
is to file a petition with the Bankruptcy Court to gain their consent to modify the first
mortgage. . . . We will then remove any proof of claim in this case and process the
modification as noted."

61.   Traver accepted the offer contained in the Wells Fargo letter of January 24, 2013. Traver
submitted a Motion for Approval of the Modification to the United States Bankruptcy Court,
Middle District of Florida. Traver also obtained from the United States Bankruptcy Court
an Order Granting Debtor's Motion for Approval of Modification Agreement (Exhibits 5,
6).

62.   As consideration, Traver committed himself to making trial and permanent payments and
abiding by the payment terms of the modified mortgage.

63.   Traver also agreed to make escrow payments along with the permanent monthly principal
and interest payments .

64.   Subsequently, Traver signed and returned the mortgage modification agreement to Wells
Fargo.

65.   Wells Fargo's letter of January 24, 2013 set out definite proposed modification terms.

66. Wells Fargo breached the contract by foreclosing on the Traver homestead as stated in the General Allegations.

67. Traver has suffered damages as stated in Paragraphs 55 and 56 in the General Allegations.

68. Wherefore, Traver prays for an award of damages, interest and Court costs.

## COUNT TWO

69. Travers sue Wells Fargo.

70. This is a State Law claim count by Traver against Wells Fargo based upon the State Law theory of fraudulent misrepresentation.

71. Traver realleges the General Allegations.

72. The Wells Fargo letter of January 24, 2013 attached to the Traver Motion for Approval of Modification Agreement (Exhibits 4, 5) constituted an offer from Wells Fargo that stated: "We can offer your client a plan that we hope is workable to both parties. . . ." The Wells Fargo letter of January 24, 2013 then listed the current mortgage payment terms and the proposed mortgage payment terms. The Wells Fargo letter also stated : ". . . The next step is to file a petition with the Bankruptcy Court to gain their consent to modify the first mortgage. . . . We will then remove any proof of claim in this case and process the modification as noted."

73. Traver accepted the offer contained in the Wells Fargo letter of January 24, 2013. Traver submitted a Motion for Approval of the Modification to the United States Bankruptcy Court, Middle District of Florida. Traver also obtained from the United States Bankruptcy Court an Order Granting Debtor's Motion for Approval of Modification Agreement (Exhibits 5, 6).

12

74. As consideration, Traver committed himself to making trial and permanent payments and abiding by the payment terms of the modified mortgage.

75. Traver also agreed to make escrow payments along with the permanent monthly principal and interest payments .

76. Subsequently, Traver signed and returned the mortgage modification agreement to Wells Fargo.

77. Wells Fargo's letter of January 24, 2013 offering Traver a plan of proposed modification terms conditioned upon the approval of the Bankruptcy Court was a material misstatement of present intent.

78. Wells Fargo's plan of proposed modification terms as contained in its letter of January 24, 2013 was a false statement. At the time of the January 24, 2013 letter, Wells Fargo always secretly kept open the unilateral option to complete the foreclosure process as Wells Fargo desired. This secret, unilateral option to foreclose was unknown to Traver. Wells Fargo's secret non-disclosed option to foreclose as Wells Fargo desired was a fraud independent of the modification contract which consisted of intentionally failing to disclose a material fact concerning the modification contract by Wells Fargo.

79. Wells Fargo had an intent to induce Traver to act on the proposed modification terms (subject to Bankruptcy Court approval) contained in the letter of January 24, 2013. If Traver acted and obtained the Bankruptcy Court's approval of the proposed modification terms, then, in such a case, Traver might convert to a Chapter Seven or abandon the bankruptcy process altogether.

80.  Traver relied upon the proposed modification terms contained in Wells Fargo's letter of January 24, 2013 and caused the conversion of his Chapter Thirteen into a Chapter Seven process.

81.  Had Traver known about the Wells Fargo secret option to keep open the foreclosure process, Traver could have stayed within the injunction protection of the Chapter Thirteen or converted to a Chapter Eleven.

82.  As a consequence of Traver's converting to a Chapter Seven completing the bankruptcy process, Wells Fargo was free to pursue its foreclosure after Traver received his discharge according to Wells Fargo's secret undisclosed option.

83.  Traver has suffered damages as alleged in Paragraph 55 through 56 of the General Allegations.

84.  Wherefore, Traver prays for an award of damages, interest and Court costs.

## COUNT THREE

85.  This is an action brought by Traver against Wells Fargo under the Florida Deceptive and Unfair Trade Practices Act §501.201 *et seq.*

86.  The Travers Sue Wells Fargo.

87.  Traver realleges the General Allegations.

88.  In relevant part, Fla. Stat. §501.204(1) forbids "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ."

89.  In relevant part, Fla. Stat.§501.203 defines "trade or commerce" as the "soliciting . . . offering . . . whether by sale, rental or otherwise of any . . . service, whether tangible or intangible or any other article . . . or thing of value where ever situated." The same §501.203 states that a "thing of value" may include a "benefit" . . . "interest."

14

90. At all relevant times Traver was a "consumer" as defined in Fla. Stat. §501.203(7).

91. The Wells Fargo letter of January 24, 2013 attached to the Traver Motion for Approval of Modification Agreement (Exhibit 4, 5) constituted an offer from Wells Fargo that stated: "We can offer your client a plan that we hope is workable to both parties. . . ." The Wells Fargo letter of January 24, 2013 then listed the current mortgage payment terms and the proposed mortgage payment terms. The Wells Fargo letter also stated : ". . . The next step is to file a petition with the Bankruptcy Court to gain their consent to modify the first mortgage. . . . We will then remove any proof of claim in this case and process the modification as noted."

92. Traver accepted the offer contained in the Wells Fargo letter of January 24, 2013. Traver submitted a Motion for Approval of the Modification to the United States Bankruptcy Court, Middle District of Florida. Traver also obtained from the United States Bankruptcy Court an Order Granting Debtor's Motion for Approval of Modification Agreement (Exhibits 5, 6).

93. As consideration, Traver committed himself to making trial and permanent payments and abiding by the payment terms of the modified mortgage.

94. Traver also agreed to make escrow payments along with the permanent monthly principal and interest payments .

95. Subsequently, Traver signed and returned the mortgage modification agreement to Wells Fargo.

96. Wells Fargo's letter of January 24, 2013 offering Traver a plan of proposed modification terms conditioned upon the approval of the Bankruptcy Court was a material misstatement of present intent.

97.   Wells Fargo's plan of proposed modification terms as contained in its letter of January 24, 2013 was a false statement. At the time of the January 24, 2013 letter, Wells Fargo always secretly kept open the unilateral option to complete the foreclosure process as Wells Fargo desired. This secret, unilateral option to foreclose was unknown to Traver. Wells Fargo's secret non-disclosed option to foreclose as Wells Fargo desired was a fraud independent of the modification contract which consisted of intentionally failing to disclose a material fact concerning the modification contract by Wells Fargo.

98.   The Wells Fargo letter of January 24, 2013 was an unconscionable act or practice and an unfair or deceptive act or practice in the conduct of trade or commerce because Wells Fargo was soliciting a service or a thing of value or a benefit from Traver while secretly retaining its unilateral option to complete the foreclosure process as stated in the preceding paragraph.

99.   Wells Fargo had an intent to induce Traver to act on the proposed modification terms (subject to Bankruptcy Court approval) contained in the letter of January 24, 2013. If Traver acted and obtained the Bankruptcy Court's approval of the proposed modification terms, then, in such a case, Traver might convert to a Chapter Seven or abandon the bankruptcy process altogether.

100.  Traver relied upon the proposed modification terms contained in Wells Fargo's letter of January 24, 2013 and caused the conversion of his Chapter Thirteen into a Chapter Seven process.

101.  Traver has suffered damages as alleged in Paragraph 55 through 56 of the General Allegations.

102.  Wherefore, Traver prays for an award of damages, interest and Court costs.

103.  Wells Fargo is liable for attorney's fees under Fla. Stat.§501.211(2) and Fla. Stat.§501.2105

16

## COUNT FOUR

104.   Traver sues Wolfe P.L.

105.   This is a State Law claim against Wolfe P.L. for malpractice.  This malpractice claim is

based upon Traver's status as a third party beneficiary of the representation contract that had

been formed between Wells Fargo and Wolfe P.L.  Traver became third party beneficiary as

a result of the Bankruptcy Court Order Granting Traver's Motion for Approval of

Modification Agreement.

106.   Prior to Traver filing his Chapter Thirteen case, Wolfe, P.L. and Wells Fargo entered into a

representation contract as subsequently amended by separate correspondence between Wells

Fargo and Wolfe P.L. (Collectively: "Contract").  Under the terms of the Contract, Wolfe,

P.L. would represent Wells Fargo and/or its agent organization in the litigation of foreclosure

action and representation of Wells Fargo and its agent organizations before the Federal

Bankruptcy Courts.  The representation contract further provided that Wolfe P.L. would

cause a dismissal or postponement of the foreclosure action for the benefit of Wells Fargo

if or when the mortgagor had brought the mortgage account current or if or when the

mortgagor had obtained a Court Approval of a Mortgage Modification Agreement.  Through

supplemental letters, correspondence and/or agreements Wells Fargo and Wolfe P.L. agreed

that it would not be proper for Wolfe P.L. to pursue mortgage foreclosures when there had

been a modification order entered by the Bankruptcy Court and the mortgagors were current

on their modification payments as a consequence of Court-ordered modification agreements.

107.   Traver realleges the General Allegations.

108.   The Wells Fargo letter of January 24, 2013 attached to the Traver Motion for Approval of

Modification Agreement (Exhibit 4, 5) constituted an offer from Wells Fargo that stated:

"We can offer your client a plan that we hope is workable to both parties. . . ." The Wells Fargo letter of January 24, 2013 then listed the current mortgage payment terms and the proposed mortgage payment terms. The Wells Fargo letter also stated : ". . . The next step is to file a petition with the Bankruptcy Court to gain their consent to modify the first mortgage. . . . We will then remove any proof of claim in this case and process the modification as noted."

109.   Traver accepted the offer contained in the Wells Fargo letter of January 24, 2013. Traver submitted a Motion for Approval of the Modification to the United States Bankruptcy Court, Middle District of Florida.  Traver also obtained from the United States Bankruptcy Court an Order Granting Debtor's Motion for Approval of Modification Agreement entered by the Bankruptcy Court on April 10, 2013(Exhibits 5, 6).

110.   As consideration, Traver committed himself to making trial and permanent payments and abiding by the payment terms of the modified mortgage.

111.   Traver also agreed to make escrow payments along with the permanent monthly principal and interest payments .

112.   Subsequently, Traver signed and returned the mortgage modification agreement to Wells Fargo.

113.   Wells Fargo's letter of January 24, 2013 set out definite proposed modification terms.

114.   The Bankruptcy Court Order of April 10, 2013 approving the Modification Agreement had the effect of bringing the Traver Mortgage current, and restructuring the mortgage payments as per Wells Fargo's letter of January 24, 2013.

115.   As a consequence of the Bankruptcy Court's Order Granting Debtor's Motion for Approval of Modification Agreement, Traver became a third party beneficiary of the contractual

relationship that had been entered into between Wolfe P.L. and Wells Fargo. That contractual relationship between Wells Fargo and Wolfe P.L. had obligated Wolfe P.L. to cease foreclosure activity or dismiss the foreclosure in the event that a mortgage modification agreement had been entered by a State or Federal Court.

116.    At the time of the entry of the State Foreclosure Judgment, Wolfe P.L. was aware, or should have been aware, by actual or imputed knowledge that Wells Fargo had submitted to Traver the loan modification commitment letter dated **January 24, 2013**. Wolfe P.L. should have been aware that there was pending in the United States Bankruptcy Court a Motion for Referral to Mortgage Modification Mediation served on **May 18, 2012**. Further, Wolfe P.L. was aware that a Motion for Approval of Modification Agreement between Wells Fargo Bank, N.A. and Traver was served on **January 29, 2013**.

117.    Notwithstanding the foregoing knowledge, Wolfe P.L. filed in the State Court an Affidavit of attorney's fees and costs on **March 28, 2013** (Exhibit 12) together with an Affidavit as to reasonable attorney's fees (Exhibit 13) on **March 23, 2013.** All of the foregoing documents were filed in preparation for the entry of a default final judgment before the State Court that occurred on **April 5, 2013** (Exhibit 7).

118.    Wolfe P.L. breached its contract with Wells Fargo and injured the third party beneficiary (Traver) by continuing the foreclosure action notwithstanding the Bankruptcy Court's entry of an Order Granting Traver's Motion for Approval of Modification Agreement.

119.    Subsequently, Wolfe P.L. filed a Motion to Cancel Foreclosure Sale (Exhibit 8) on May 14, 2013. This Motion to Cancel Foreclosure Sale occurred more than a month after the Bankruptcy Court had entered its Order Approving the Modification Agreement. Wolfe P.L. did not inform the State Court that an Order Approving the Modification Agreement had

been entered by the United States Bankruptcy Court on April 10, 2013. Wolfe P.L. failed

to attach the Bankruptcy Court's Order Approving Modification Agreement even though

Wolfe P.L. had notice (actual and imputed) of the Bankruptcy Court's previously entered

Order Approving Modification Agreement.

120.   Consequently, Wolfe P.L. breached its contract with Wells Fargo and injured the third party

beneficiary (Traver) by not requesting relief from the Final Judgment pursuant to Fla. R. Civ.

P. 1.540(b). Wolfe did not claim excusable neglect in the proper format and did not attach

the Bankruptcy Court Order Approving Modification. This breach of contract caused

damages to the third party beneficiary Traver.

121.   The Travers have suffered damages as stated in Paragraphs 55 through 56 of the General

Allegations.

122.   Wherefore, Traver pray for an award of damages, Court costs, and interest.

## COUNT FIVE

123.   Traver sues Wolfe P.L.

124.   This is a State Law claim against Wolfe P.L. based upon the Florida Consumer Collection

Practices Act, Fla. Stat. §559.551 *et seq*. At all relevant times, Wolfe, P.L. was a "debt

collector" as defined in Fla. Stat. §559.55(6). Wolfe P.L. identifies itself in

telecommunications as a "debt collector" and in letters to consumers as a "debt collector."

125.   At all relevant times, Traver owed a "consumer debt" to Wells Fargo as defined in Fla. Stat.

§559.55(1). Additionally, Traver was a "consumer" as defined in Fla. Stat.§559.55(2).

126.   Fla. Stat. §559.552 provides in pertinent part: ". . . This part is in addition to the requirements

and regulations of the Federal Act. In the event of any inconsistency between any provision

of this part and any provision of the Federal Act, *the provision which is more protective of the consumer or debtor shall prevail*." (emphasis supplied)

127.  Traver realleges the General Allegations.

128.  The Wells Fargo letter of January 24, 2013 attached to the Traver Motion for Approval of Modification Agreement (Exhibit 4, 5) constituted an offer from Wells Fargo that stated: "We can offer your client a plan that we hope is workable to both parties. . . ." The Wells Fargo letter of January 24, 2013 then listed the current mortgage payment terms and the proposed mortgage payment terms. The Wells Fargo letter also stated : ". . . The next step is to file a petition with the Bankruptcy Court to gain their consent to modify the first mortgage. . . . We will then remove any proof of claim in this case and process the modification as noted."

129.  Traver accepted the offer contained in the Wells Fargo letter of January 24, 2013.  Traver submitted a Motion for Approval of the Modification to the United States Bankruptcy Court, Middle District of Florida.  Traver also obtained from the United States Bankruptcy Court an Order Granting Debtor's Motion for Approval of Modification Agreement entered by the Bankruptcy Court on April 10, 2013(Exhibits 5, 6).

130.  As consideration, Traver committed himself to making trial and permanent payments and abiding by the payment terms of the modified mortgage.

131.  Traver also agreed to make escrow payments along with the permanent monthly principal and interest payments .

132.  Subsequently, Traver signed and returned the mortgage modification agreement to Wells Fargo.

133.  Wells Fargo's letter of January 24, 2013 set out definite proposed modification terms.

134.   The Bankruptcy Court Order proving the Traver/Wells Fargo Modification Agreement had the effect of bringing the Traver account current with Wells Fargo and rescheduling the payment terms according to Wells Fargo's earlier letter of January 24, 2013.

135.   Wolfe P.L. was aware, or should have been aware, by actual or imputed knowledge that Wells Fargo had submitted to Traver a loan modification commitment letter dated January 24, 2013. There was pending in the United States Bankruptcy Court a Motion for Referral to Mortgage Modification Mediation served on **May 18, 2012.** Further, Wolfe P.L. was aware that a Motion for Approval of Modification Agreement between Wells Fargo Bank, N.A. and Traver was served on **January 29, 2013**.

136.   Notwithstanding the foregoing knowledge, Wolfe P.L. filed in the State Court an Affidavit as to attorney's fees and costs on **March 28, 2013** (Exhibit 12) together with an Affidavit as to reasonable attorney's fees (Exhibit 13) on **March 23, 2013.** All of the foregoing documents were filed to collect a debt in preparation for the entry of a default final judgment before the State Circuit that occurred on April 5, 2013 (Exhibit 7).

137.   Separate and apart from the mortgage foreclosure, Wolfe P.L. was required to claim and enforce the underlying debt itself. Therefore, it was necessary to: (a) sue on the promissory note held by Wells Fargo; and (b) file an affidavit as to attorney's fees and costs. It was necessary to claim and enforce the debt itself because in a mortgage foreclosure action, as it is held in the State of Florida, the foreclosing party gets a free bid at the post-judgment auction sale up to the amount of the debt established by the final judgment of foreclosure. In this manner, Wolfe P.L. by enhancing its attorney's fees and costs application could receive the benefit of its enhanced fees through the debt as established in the Final Judgment of Foreclosure.

138.   Subsequently, Wolfe P.L. filed a Motion to Cancel Foreclosure Sale (Exhibit 8). This Motion to Cancel Foreclosure Sale occurred more than a month after the Bankruptcy Court had entered its Order Approving the Modification Agreement. Wolfe P.L. did not inform the State Court that the Bankruptcy Court had an Order Approving the Modification Agreement had been entered by the United States Bankruptcy Court on April 10, 2013.

139.   Furthermore, Wolfe P.L. continued to enforce the debt by not requesting relief from the Final Judgment pursuant to Fla. R. Civ. P. 1.540(b). Wolfe P.L. did not claim excusable neglect in the proper format and did not attach the Bankruptcy Court's Order Approving Modification. Wolfe P.L. failed to inform the Circuit Court in any way concerning the Bankruptcy Court's Order Approving the Modification.

140.   Wolfe P.L.'s continuance of the foreclosure proceedings after April 10, 2013 was an effort to claim or attempt to enforce a debt. Wolfe P.L. knew that the debt was not legitimate (because of the Bankruptcy Court Order). Wolfe P.L.'s allowing the foreclosure proceeding to continue was the assertion of the claimed legal right to collect a debt when Wolfe P.L. knew that the legal right did not exist because of the Bankruptcy Court's Order Approving the Traver/Wells Fargo Modification Agreement. Wolfe P.L.'s assertion of a claimed legal right when that right did not exist was a violation of Fla. Stat.§559.72(9).

141.   Fla. Stat.§559.77 provides for an award of actual damages, attorney's fees and costs occasioned by violation of Fla. Stat.§559.72.

142.   Traver has suffered damages as stated in Paragraphs 55 through 56 of the General Allegations.

143.   Wherefore, Travers pray for an award of damages, attorney's fees, Court costs, and interest.


DATED this 29th day of August 2013.


ALBERT H. MICKLER
Trial Attorney for Traver

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy hereof, with attachments, was furnished to the following

parties by CM/ECF electronic transfer; and to their personal email addresses as indicated; all the

foregoing on this 29th day of August 2013.

Ronald R. Wolfe & Associates, P.L.
c/o Rumberger, Kirk & Caldwell
P O Box 1873
Orlando, FL 32802
Suzanne Barto Hill Esquire
shill@rumberger.com
Kevin R. Gowen, Esquire
kgowen@rumberger.com

and to:

Wells Fargo Bank, N.A.
c/o Carton Fields, P.A.
525 Okeechobee Blvd Suite 1200
West Palm Beach, FL 33401
mwinston@carltonfields.com
Kristin A. Gore, Esquire
kgore@carltonfields.com

Law Offices of Mickler & Mickler

ALBERT H. MICKLER
Florida Bar No. 168960
Trial Attorney for Travers
5452 Arlington Expressway
Jacksonville, Florida 32211
(904) 725-0822
Fax: (904) 725-0855
Email: ahm-planman@juno.com

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

IN RE:            THOMAS A. TRAVER

                                                  CASE NO.: 3:12-bk-03054-JAF

                          Debtor

_____/

## MOTION FOR REFERRAL TO MORTGAGE MODIFICATION MEDIATION

The debtor requests entry of an order referring the debtor and HSBC Bank USA, National

Trust Co. to mortgage modification mediation, and in support states:

1.  The debtor filed this Chapter 13 case in an attempt to retain her primary residence.

2.  The debtor would like to modify the terms of the mortgage(s) encumbering his primary residence. The debtor's income will allow him to contribute as much as thirty-one percent (31%) of his current gross income to payment of his modified mortgage debt.

3.  Mediation pursuant to Local Rule 9019-2 will assist the parties in negotiation of a modification of the relevant mortgage(s).

4.  Debtor will pay the $350 mediation cost directly to the mediator for two (2) hours of mediation. The Debtor is directed to disburse to the mediator this fee promptly upon the earlier of the mediator filing a report concluding the mediation, continuing the mediation, or upon modification of the loan. The mediator also is entitled to the full $350.00 fee (and the attorney is authorized to disburse the fee) if either party fails to timely cancel the mediation session or to attend a scheduled mediation session. A cancellation is considered timely if it is received by the mediator and all parties no later than 14 days prior to the scheduled mediation date.

[Intentionally Left Blank]

EXHIBIT ___4___

PAGE ___1___ OF ___1___ PAGES

Wherefore, debtor requests the entry of an order referring this case to mediation and for such other and further relief as the Court deems just and proper.

### CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY that a copy of the foregoing was furnished to Douglas W. Neway, Chapter 13 Trustee, by CM/ECF electronic delivery and to HSBC Bank USA, National Trust Co.,, c/o Teresa M. Hair, Esquire, P O Box 25018, Tampa, Florida 33622-5018, by U.S. Mail, postage pre-paid and to HSBC Bank USA, N.A., c/o Irene Dorner, President/CEO/Managing Agent, 1800 Tysons Blvd., McLean, VA 22102, by **Certified U.S. Mail**, postage pre-paid, this 8 day of May, 2012.

Law Offices of Mickler & Mickler

By: _____
BRYAN K. MICKLER
Attorney of Debtor
5452 Arlington Expressway
Jacksonville, Florida 32211
(904) 725-0822/FAX: 725-0822
Florida Bar No.: 091790

EXHIBIT ___4___
PAGE ___2___ OF ___2___ PAGES

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:       THOMAS A. TRAVER

CASE NO.: 3:12-bk-03054-JAF

Debtor

_____ /

## MORTGAGE MODIFICATION MEDIATION ORDER

This case was considered by the Court on the THOMAS A. TRAVER's (Debtor) Motion for Mortgage Modification Mediation. Finding that the debtor's desire to retain his primary residence and has stated that he has sufficient income to justify mediation with the goal of modifying the current mortgage encumbering his primary residence, it is:

ORDERED:

1. <u>Creditor Representative</u>. Within 14 days of the entry of this Order, HSBC Bank USA, National Trust Company (Creditor), if unrepresented, shall file a designation on the record of the creditor's contact for this loan modification mediation, and supply debtor and debtor's counsel with the loan modification package.

2. <u>Scheduling</u>. Within 28 days of the entry of this order, counsel for debtor, shall coordinate the date, time, and place of the mediation at a mutually convenient time working directly with creditor's counsel and the mediator.

3. <u>Completion of Mediation within 90 Days</u>. The debtor and creditor are ordered to attend mediation to be scheduled within 60 days of the date of this order and completed within 90 days, unless agreed to by all parties.

4. <u>Selection of Mediator</u>. The parties shall select a qualified mediator. A Notice of Scheduling Mediation shall be filed with the Court within 7 days of scheduling the mediation.

5. <u>Court Selection of Mediator</u>. If the parties are unable to agree or to secure a mediator within 28 days of the entry of this order, counsel for debtor may, notify the Court, in writing, so that the Court can appoint an acceptable mediator.

6. <u>Debtor's Financial Documents</u>. Counsel for debtor shall, 28 days after entry of this order, provide debtor's most current (within 30 days) financial information to Counsel for creditor[s] if applicable and as follows:

   a.  HAMP RMA Financial Disclosure;
   b.  Lender Specific Modification Form;
   c.  Last 2 months of pay stubs for all non-self-employed borrowers;

EXHIBIT

PAGE ___1___ OF ___4___ PAGE

d.  6 month profit/loss statement from self-employed borrowers, typed, signed and dated on business letterhead;

e.  Benefit Statements (Social Security, Disability, Unemployment, Welfare, Pension Award Letter, etc.);

f.  Lease agreement (if claiming rental income), or contribution letter;

g.  Last 2 months of bank statements (all pages), personal and business, if applicable;

h.  Last 2 years of signed Tax Returns, personal and business, if applicable;

i.  IRS Form 4506-T;

j.  Current utility bill (with debtor[s]' name on it and property address);

k.  Homeowners' insurance quote/policy;

l.  Current tax assessment for property;

m.  Proof of HOA Dues;

n.  Hardship Letter, signed and dated;

o.  Schedule I;

p.  Schedule J;

q.  Chapter 13 Plan;

r.  Consent to Escrow, signed and dated;

s.  Dodd-Frank Form; and

t.  Any additional documents requested by creditor.

7.  Creditor Request for Additional or Updated Documents. At least 14 days prior to the scheduled mediation, creditor and its counsel shall review the debtor's financial information and notify the debtor of any additional or updated financial records they must supply to the creditor, and to the mediator. Debtor shall provide creditor and its counsel all reasonably requested additional financial records within 72 hours of such notification. If there is a non-filing co-borrower, creditor may request financial information from the non-filing co-borrower in anticipation of the mediation if the filing debtor intends to use the non-filing co-borrower's income to qualify for a modification. Upon receipt of all documents, creditor's counsel shall timely submit the documents to underwriting at least 10 days in advance of the mediation.

8.  Identification of Mediation Participants with Settlement Authority. At least 21 days prior to the scheduled mediation, counsel for the creditor must provide a completed Certification of Settlement Authority identifying the creditor's representatives who will appear at the mediation to the mediator, and debtor's counsel along with the case number of the action and contact information for all of the parties. The contact information must include the last known mailing address, phone number, and email address for each party. **At least one of the creditor's representatives designated in the Certificate of Settlement Authority must attend any mediation session scheduled pursuant to this Order.** The creditor's representatives may appear telephonically as long as they also are available to sign a binding settlement agreement by facsimile, email, or other electronic means, at the time of the mediation. Creditor may amend the Certificate of Settlement Authority to change the designated creditor's representatives no later than 5 days prior to the mediation session.

9.  Mediation Parties Must Attend Entire Mediation Session. The trustee of a securitized loan or its fully authorized designee with complete and master servicer settlement authority (to settle within the guidelines of any third party, or subject to any third party investor approval) or a specialist from the creditor's mortgage modification department with complete and master servicer authority to settle must attend and continuously participate in the entire mediation session.



10. <u>Telephonic Attendance by Creditors</u>. Both counsel for the creditor and the creditor's representatives designated in the Certificate of Settlement Authority may participate in the mediation by telephone. If counsel for the creditor or the creditor's representatives is not physically present at the mediation, each must be able to sign a binding settlement agreement by facsimile, email, or other electronic means, at the time of the mediation. Debtor and debtor's counsel or special counsel must be physically present at the mediation.

11. <u>Mediator Report</u>. Within 7 days of the conclusion of the mediation, the mediator is directed to file a written report indicating whether any agreement on a mortgage modification was reached. Parties are directed to promptly seek any necessary court approval for the mortgage modification and to formalize the modification in any needed legal documents.

12. <u>Mediation Fee ($350.00)</u>. Upon filing this Motion to Mediate, the debtor's shall pay the mediation cost of $350.00 to the mediator for two hours of mediation. The Debtor is directed to disburse to the mediator this fee promptly upon the earlier of the mediator filing a report concluding the mediation, continuing the mediation, or upon modification of the loan. The mediator also is entitled to the full $350.00 fee (and the attorney is authorized to disburse the fee) if either party fails to timely cancel the mediation session or to attend a scheduled mediation session. A cancellation is considered timely if it is received by the mediator and all parties no later than 14 days prior to the scheduled mediation date.

13. <u>Creditor Fee</u>. Counsel for the creditor is entitled to receive a reasonable fee for all work involved in connection with the mediation, including requesting and reviewing documents, preparing for the mediation, scheduling the mediation, and attending the mediation, and will clearly delineate such fee in the completed agreement or by amended proof of claim.

14. <u>Debtor's Counsel Fee</u>. Debtor's counsel also is entitled to receive a reasonable attorney's fee, and shall file supplemental or amended Disclosure of Attorney's Fee as required by Bankruptcy Rule 2016(b) within 15 days of receipt.

15. <u>Written Roll</u>. Prior to the commencement of any mediation conference, the mediator shall take a written roll listing the presence of the debtor, debtor's counsel, creditor's counsel, and creditor's representative with full authority to settle within the guidelines of any third party or subject to any third part investor's final approval. If the mediator determines that a needed party is not present, the mediator shall report the non-appearance by that party on the written roll. If the mediator determines that the creditor[s]' representative present does not have full authority to settle pursuant to the Certificate of Settlement Authority, the mediator shall report that the creditor's representative did not appear on the written roll as a representative with full settlement authority as required by this Order.

16. The written roll and communication of authority of the mediator is not a mediation communication. If a mediation does not occur because a party fails to attend or the creditor[s]' representative lacks settlement authority, the Court may order the non- attending party to physically appear at all future scheduled mediations, tax costs of another mediation to the non-attending party, or impose other sanctions as the Court deems appropriate, including entering an Order Granting the Modification of the Mortgage substantially complying with the HAMP guidelines or awarding attorney's fees and costs to the opposing party.

17. <u>Privileged Communications</u>. All statements made by the parties, attorneys, and other participants at or associated with the mediation (except as provided in paragraph 15 above

EXHIBIT **2**

PAGE ___ 3 ___ OF ___ 4 ___ PAGES

regarding the written roll) are privileged and not reported, recorded, or placed into evidence, made known to the Court, or construed for any purposes as an admission. No party shall be bound by any statement made or action taken at the mediation conference unless an agreement is reached.

18. <u>Stay Lifted to Allow Loan Modification</u>. The automatic stay is modified, to the extent necessary, to facilitate the mortgage creditor[s]' loan modification terms pursuant to this Order. The parties shall timely submit any agreed loan modifications to the Court for approval.

19. All parties are directed to comply with this Order and to engage in the mediation process in good faith. Failure to do so may result in the imposition of damages and sanctions.

DONE AND ORDERED in Jacksonville, Florida, on May 18, 2012.

JERRY A. FUNK
United States Bankruptcy Judge

CC:

Debtor
Bryan K. Mickler
Douglas W. Neway, Chapter 13 Trustee
HSBC Bank USA, National Trust Co.,, c/o Teresa M. Hair, Esquire, P O Box 25018, Tampa, Florida 33622-5018
HSBC Bank USA, N.A., c/o Irene Dorner, President/CEO/Managing Agent, 1800 Tysons Blvd., McLean, VA 22102



B10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF FLORIDA | PROOF OF CLAIM |
|---|---|

Name of Debtor: Thomas A Traver | Case Number: 12-03054-JAF

*NOTE: Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
HSBC BANK USA, NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF MASTR REPERFORMING LOAN TRUST 2006-1

Name and address where notices should be sent:

WELLS FARGO BANK, N.A.
ATTENTION:  Bankruptcy Department
MAC#D3347-014
3476 Stateview Boulevard
Ft. Mill, SC  29715

Telephone number: (800) 274-7025     Email: POCNOTIFICATIONS@WELLSFARGO.COM

Name and address where payment should be sent (if different from above):

WELLS FARGO BANK, N.A.
Payment Processing
MAC X2302-04C
One Home Campus
Des Moines, IA  50328

Telephone number: (800) 274-7025     Email: POCNOTIFICATIONS@WELLSFARGO.COM

**COURT USE ONLY**

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:
*(If Known)*

Filed on:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim.  Attach a copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $128,582.02

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  Money Loaned
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**
\*\*\*\*\*\*\*7215

**3a. Debtor may have scheduled account as:**

(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
WFCMGE1203054FLM28727215
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$23,861.37

**Nature of property or right of setoff:** ☒ Real Estate   ☐ Motor Vehicle   ☐ Other   **Basis for perfection:**  Recorded Mortgage

**Describe:** 10515 OSPREY NEST DRIVE E, JACKSONVILLE, FL 32257

**Value of Property:** $_____

**Annual Interest Rate** 5.75 %     **Amount Unsecured:** $_____
☒ Fixed or ☐ Variable
(when case was filed)

**Amount of Secured Claim:** $ 128,582.02

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507(a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)



B 10 (Official Form 10) (12/11)

---

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)
Check the appropriate box.

☐ I am the creditor.     ☐ I am the creditor's authorized agent.      ☐ I am the trustee, or the debtor,       ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)       or their authorized agent.            (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

/s/ MARIE D. CAMPBELL                                    08/31/2012
MARIE D. CAMPBELL   Bar Number: 0543357                      (Date)
Ronald R Wolfe & Associates, P.L.
P.O. Box 25018
Tampa, Florida  33622-5018
bkatt@wolfelawfl.com
(813) 251-4766 Ext: 3025

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

EXHIBIT 3
PAGE 2 OF 12 PAGES

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

EXHIBIT __B__

PAGE __3__ OF __12__ PAGE

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid before other unsecured claims in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

EXHIBIT **3**
PAGE

B 10A (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.   See Bankruptcy Rule 3001(c)(2).

**Name of debtor:** Thomas A Traver

**Name of creditor:** HSBC BANK USA, NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF MASTR REPERFORMING LOAN TRUST 2006-1                    **Case number:**   12-03054-JAF

**Uniform Claim Number:** WFCMGE1203054FLM28727215

**Last four digits of any number you** \*\*\*\*\*\*\*7215
**use to identify the debtor's account**

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition data (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1.   **Principal due**                                                                                          (1)$ 109,088.25

| 2. Interest due | Interest Rate | From | To | Amount | |
|---|---|---|---|---|---|
| Interest to Date of Filing | 5.75% | 10/10/2010 | 05/04/2012 | $10,000.23 | |
| | | Total interest due as of the petition date | $ 10,000.23 | | (2)+$ 10,000.23 |

3.   **Total principal and**
     **Interest due**                                                                                   (3)   $  119,088.48

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates Incurred | | Amount |
|---|---|---|---|
| 1.  Accrued Late Charges | | | $287.05 |
|      3 late charge(s) @ $28.54 | 01/23/09, 3/20/10, 06/22/10 | $85.62 | |
|      3 late charge(s) @ $36.63 from 12/16/2011 to 02/16/2012 | | $109.89 | |
|      2 late charge(s) @ $45.77 from 03/16/2012 to 04/16/2012 | | $91.54 | |
| 2.  Insufficient Funds (NSF) Fees | | | $0.00 |
| 3.  Foreclosure Fees | | | $183.77 |
|      Foreclosure Fees | 4/7/10 | $840.00 | |
|      Application of funds to foreclosure fee balance 10/11/10 | | $-656.23 | |
| 4.  Foreclosure Costs | | | $1,181.00 |
|      Title Search | 4/7/2010 | $175.00 | |
|      Title Exam | 4/7/2010 | $150.00 | |
|      Filing Fee | 4/7/2010 | $361.00 | |
|      Investigation/SOP Fee | 4/7/2010 | $495.00 | |
| 5.  Property Appraisal Costs | | | $190.00 |
|      2 Property Appraisals @ $95.00 | 6/29/06, 8/30/07 | $190.00 | |
| 6.  Property Inspection Costs | | | $206.25 |
|      1 Property Inspections @ $25.00 | 10/22/2008 | $25.00 | |
|      1 Property Preservation - Photos @ $1.25 12/06/2006 | | $1.25 | |
|      12 Property Inspections @ $15.00 : 9/28/05, 11/23/05, 3/6/06, 6/6/06, 8/28/06, 10/09/06, 10/27/06, 1/2/07, 3/6/07, 3/16/12, 4/12/12 | | $180.00 | |

EXHIBIT 3

PAGE 5 OF 12

Case 3:12-bk-03054-JAF    Claim 6-1    Filed 08/31/12    Page 6 of 12

| | | |
|---|---|---|
| 7. Escrow Shortage (not recouped through payments) | | $2,177.70 |
| 8. Miscellaneous Fees | | $0.00 |
| 9. Prior Bankruptcy Fees and Costs | | $2,661.65 |
|     Case 06-01605, 08-05902, 10-02537 | | |
|     Brice Vander et al 06-01605 6/26/06, 11/24/2008 | $1,174.73 | |
|     Application of funds to bankruptcy balance 9/30/2008 | $-363.08 | |
|     Ronald R Wolfe 08-05902 10/22/2008, 4/17/2009 | $1,200.00 | |
|     Ronald R Wolfe 10-02537 4/29/10, 6/18/10 | $650.00 | |
| 10. Post Petition Bankruptcy Fees and Costs | | $0.00 |

Total prepetition fees, expenses, and charges.  Add all of the amounts listed above.:  $ 6,887.42

EXHIBIT 3
PAGE 6 OF 12

B 10A   (Attachment A) (12/11)
Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

___ No.

_X_ Yes.   Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | | |
|---|---|---|---|---|
| 1. | **Installment payments due** | Date last payment received by creditor | 10/11/2011 | |
| | | Number of installment payment due   (1) | <u>19</u> | |

2.  **Amount of installment payments due:**
Payments Arrearage                                                                    $17,400.58
        19 payment(s) @ $915.82 from 11/01/2010 to 05/01/2012      $17,400.58

                        Total installment payments due
                        as of the petition date   $ 17,400.58                         (2) $ <u>17,400.58</u>

3.  **Calculation of cure    Add** total prepetition fees, expense, and charges       Copy total from      → $ <u>6,887.42</u>
       **amount**                                                                     Part 2 here ▶

                        **Subtract** total of unapplied funds (funds received         - $ <u>-426.63</u>
                        but not credited to account)
                        **Subtract** amounts for which the debtor is entitled         -  $ <u>0.00</u>
                        to a refund

Total amount necessary to cure default as the petition date                           (3) $ <u>23,861.37</u>
                                                                                      Copy total onto Item 4 of
                                                                                      Proof of Claim form

B12008432

**SECURED CLAIM.   THIS IS NOT TO BE USED AS A PAYOFF.**

| | |
|---|---|
| Accrued Late Charges | $287.05 |
| Principal Balance | $109,088.25 |
| Interest to Date of Filing | $10,000.23 |
| Escrow Advances | $5,210.45 |
| Foreclosure Fees | $183.77 |
| Foreclosure Costs | $1,181.00 |
| Property Appraisal Costs | $190.00 |
| Property Inspection Costs | $206.25 |
| Prior Bankruptcy Fees and Costs | $2,661.65 |
| Case 06-01605, 08-05902, 10-02537 | |
| Suspense | $-426.63 |
| Secured Claim Total: | $115,699.48 |

The post-petition payment amount is $984.32.   This payment includes P&I in the amount of $713.43 and escrow for Taxes in the amount of $148.71 and Insurance in the amount of $122.18.   Changes to the monthly payment amount may be required because of interest rate adjustments or escrow requirement changes pursuant to paragraph number three of the Mortgage..

The Note and Mortgage are being filed in support of this Claim.   The Mortgage was recorded on September 20, 2003 in Book 11369 Page 1529 in the official records of DUVAL County.

<u>IF LEGAL FEES AND COSTS ARE INCURRED AFTER THIS PROOF OF CLAIM IS FILED, YOUR ACCOUNT WILL BE</u>
<u>ASSESSED THOSE FEES AND COSTS IF LEGALLY PERMISSIBLE IN THE OPINION OF THE LENDER, IF SUCH</u>

PAGE ____ OF ____ PAGES

FEES AND COSTS ARE NOT PAID AS PART OF THIS CASE, THEY MAY BE COLLECTED IN THE FUTURE PURSUANT TO THE TERMS OF YOUR SECURITY INSTRUMENT, THE BANKRUPTCY CODE, AND OTHER APPLICABLE LAW.

In the event this Chapter 13 has been filed and there is no stay in effect, or if the automatic stay is subject to expiring, this claim is being filed for information purposes only and is not a waiver of the Secured Creditor's rights regarding the limitation or non existence of the automatic stay.

Escrow requirements fluctuate on a yearly basis and can result in an escrow account shortage or a surplus/overage.   Pursuant to the terms of the Note and Mortgage, such fluctuations may necessitate change of the ongoing, post-petition monthly payment to account for increases or decreases in yearly tax and/or insurance obligations.   If the default has been cured and the Debtor's escrow account contains a surplus/overage at the time of analysis, the Debtor may be entitled to a refund of the surplus amount pursuant to the terms of the Note and Mortgage.

**Creditor reserves the right to amend its claim to seek a deficiency balance, if any, in the event the creditor's collateral is liquidated**

The creditor has the right to enforce the Note.

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

EXHIBIT **3**

PAGE __8__ OF __12__ PAGES

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that copies of the foregoing Proof of Claim have been furnished by regular U.S. Mail to all parties listed this 31 day of August, 2012.

Thomas A Traver
10515 Osprey Nest Dr. W.
Jacksonville, FL   32257

I HEREBY CERTIFY that copies of the foregoing Proof of Claim have been furnished by Electronic Mail to all parties listed this 31 day of August, 2012.

Albert H Mickler
cmickler_32277@yahoo.com
5452 Arlington Expressway
Jacksonville, FL   32211

Douglas W. Neway, Trustee
trustee@mldavisch13.com
P. O. Box 4308
Jacksonville, FL   32201

Ronald R Wolfe & Associates, P.L.
Post Office Box 25018
Tampa, FL 33622-5018
(813) 251-4766 Ext: 3025
Fax: 813-251-1541
Email: bkatt@wolfelawfl.com

By: /s/ MARIE D. CAMPBELL
Marie D. Campbell
Florida Bar No. 0543357
ATTORNEY FOR HSBC BANK USA, NATIONAL
TRUST COMPANY, AS TRUSTEE FOR THE
HOLDERS OF MASTR REPERFORMING LOAN
TRUST 2006-1

**WELLS FARGO HOME MORTGAGE**

Wells Fargo Home Mortgage
PO Box 14547
Des Moines, IA 50306-4547

Page 1 of 3

For informational purposes

Escrow account disclosure statement
and notice of new mortgage payment

| | |
|---|---|
| Loan number: | |
| Next payment due date | November 01, 2010 |
| New payment effective date | June 01, 2012 |
| New payment amount: | $984.32 |
| Principal balance: | $100,088.25 |
| Interest rate: | 5.750% |
| Statement date: | May 09, 2012 |
| Account review period: | Mar 2012 - May 2012 |
| Customer service: | 1-800-340-0473 |
| Customer service hours: | Mon - Fri 6 a.m. - 10 p.m. |
| | Sat 8 a.m. - 3 p.m. CT |

We accept telecommunications relay service calls.

Property address:
10515 OSPREY NEST DR
JACKSONVILLE FL 32257

THOMAS A TRAVER
10515 OSPREY NEST DR W
JACKSONVILLE FL 32257-1032

Dear THOMAS A TRAVER:

Each year, we review your escrow account to make sure the escrow portion of your monthly mortgage payment covers your property taxes and/or insurance premiums. Increases or decreases in your annual taxes and/or insurance premiums may cause your monthly mortgage payment amount to change. Here are the details of your most recent escrow account review.

Note: This notice is for informational purposes only and is being provided as a courtesy should you voluntarily decide to make any escrow shortage payment, if applicable. This notice should not be construed as an attempt to collect a debt or a demand for payment contrary to any protection you may have received pursuant to your bankruptcy case.

**New monthly escrow and mortgage payment amount**

| New payment effective date<br>June 01, 2012[3] | Current<br>monthly payment ($) | New<br>monthly payment ($) |
|---|---|---|
| Principal and/or interest | 713.43 | 713.43 |
| Escrow payment | 202.39 | 270.89 |
| Escrow shortage/prepayment[2] | 0.00 | 0.00 |
| Total payment amount | 915.82 | 984.32 |

1. If you use one of our automatic payment options, we will adjust your electronic withdrawal(s) to ensure your June 01, 2012 payment is made in full.

2. If your current monthly payment includes an amount to cover a previous escrow shortage, this amount will be added. If your current monthly payment includes an adjustment for extra funds you deposited to your escrow account, this amount will be deducted.

Your account is in balance. Our calculation has resulted in no projected shortage or overage in your escrow account.

*** This section intentionally left blank ***

Page 2 of 3

**For informational purposes**                                          Loan number: 

The following information covers your projected escrow account activity from Jun 2012 to May 2013

**Projected escrow account disbursements**
Annualized items to be paid from your escrow account ($):

| | |
|---|---|
| COUNTY TAX | 1,784.54 |
| HAZARD INS | 1,466.13 |
| Total disbursements | 3,250.67 |
| Monthly escrow payment | 270.89[1] |

*1. Your monthly escrow payment is calculated by dividing the total disbursements by 12.*

**Projected escrow account activity for the next 12 months**

| | Anticipated payments ($) | | | Escrow balance ($) | |
|---|---|---|---|---|---|
| Date | To escrow | From escrow | Description | Projected | Required |
| Jun 2012 | | | Starting balance | 1,365.04[·] | 812.66 |
| Jun 2012 | 270.89 | 0.00 | | 1,094.15[·] | 1,083.55 |
| Jul 2012 | 270.89 | 0.00 | | 823.26[·] | 1,354.44 |
| Aug 2012 | 270.89 | 0.00 | | 552.37[·] | 1,625.33 |
| Sep 2012 | 270.89 | 0.00 | | 281.48[·] | 1,896.22 |
| Oct 2012 | 270.89 | 0.00 | | 10.59[·] | 2,167.11 |
| Nov 2012 | 270.89 | 1,784.54 | DUVAL COUNTY | 1,524.24[·] | 653.46 |
| Dec 2012 | 270.89 | 0.00 | | 1,253.35[·] | 924.35 |
| Jan 2013 | 270.89 | 0.00 | | 982.46[·] | 1,195.24 |
| Feb 2013 | 270.89 | 0.00 | | 711.57[·] | 1,466.13 |
| Mar 2013 | 270.89 | 0.00 | | 440.88[·] | 1,737.02 |
| Apr 2013 | 270.89 | 1,466.13 | STATE FARM INS | 1,635.92[·][2] | 541.78[3] |
| May 2013 | 270.89 | 0.00 | | 1,365.03[·] | 812.67 |
| Total | 3,250.68 | 3,250.67 | | | |

The projected escrow account activity is based on the most recent tax and/or insurance information available as well as the
assumption that your payments will be received as agreed.

*2. Projected low point . The point during the 12-month period at which the projected escrow balance will reach its lowest point*

*3. Required escrow balance. To cover unanticipated disbursements, including increases to tax or insurance payments, there is a
2-month minimum escrow balance allowable by state law and/or your mortgage contract. This amount does not include mortgage
insurance.*

- Your 2-month minimum escrow balance is $541.78
- State law requires that this minimum escrow balance not exceed $541.78
- Note: If you have an adjustable rate mortgage (ARM), you will receive a notice about your new mortgage payment when your
ARM rate is scheduled to change.

**Information about your escrow account**

| | |
|---|---|
| Your lowest projected escrow account balance (low point) ($) | 1,635.92[·] |
| Plus escrow adjustment[4] ($) | 2,177.70 |
| Less your required minimum escrow account balance ($) | 541.78 |
| **This means your escrow account is in balance** | 0.00 |

*4. An Escrow Adjustment of $2,177.70, scheduled to be repaid through the bankruptcy, is included in this calculation.*

Page 3 of 3

For informational purposes                     Loan number: 

The following information covers your escrow account history activity from Mar 2012 to May 2012

| Date | Payments to escrow ($) | | Payments from escrow ($) | | Description | Escrow balance ($) | |
|---|---|---|---|---|---|---|---|
| | Projected | Actual | Projected | Actual | | Projected | Actual |
| Mar 2012 | | | | | Starting balance | 1,440.00 | 3,744.32[1] |
| Mar 2012 | 268.71 | 0.00[1] | 0.00 | 0.00 | | 1,708.71 | 3,744.32[1] |
| Apr 2012 | 268.71 | 0.00[1] | 1,440.00 | 1,466.13[1] | STATE FARM INSURANCE C | 537.42 | 5,210.45[1] |
| May 2012 est. | 268.71 | 3,845.41[1] | 0.00 | 0.00 | | 806.13 | 1,365.04[1] |
| Totals | 806.13 | 3,845.41 | 1,440.00 | 1,466.13 | | | |

1. Indicates where a difference exists between the projected and actual account activity.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
© 2012 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801



Manage your mortgage payments easily with the Preferred Payment Plan℠

· Schedule weekly, biweekly, semi-monthly or monthly payments
· Save time and money with free, secure withdrawals
· No due dates to remember or checks to write

It's free, secure and convenient. To enroll, call 1-866-386-8519.



Date: 01/24/2013

BRYAN K MICKLER
5452 ARLINGTON EXPRESSWAY
JACKSONVILLE, FL 32211

Subject:  Loan modification proposal
Borrower(s):
**THOMAS A TRAVER**
Bankruptcy No.: 1203054
Account No.: 0226387215
Property Address:
    10515 OSPREY NEST DR W
    JACKSONVILLE FL 32257

### Account Information

| | |
|---|---|
| Fax: | 1-866-359-7234 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon -Thur, 7 a.m. -10 p.m.; |
| | Fri, 7 a.m. -8p.m.; Sat, 7 a.m. |
| | – 6 p.m.; |
| | Sun, 9 a.m. – 8p.m. CT |

Loan number:   0226387215
Property address: 10515 OSPREY NEST DR W
                  JACKSONVILLE FL 32257

Dear BRYAN K MICKLER:

We have received consent from your office to discuss workout options with your client. We can offer your client a plan that we hope is workable to both parties.

The modification we propose includes the following changes:

| Current Terms | | Proposed Modified Terms | |
|---|---|---|---|
| Current Unpaid Balance | $ 108,897.53 | Modified Unpaid Balance | $ 136,973.70 |
| Current Maturity Date | 10/01/33 | Modified Mortgage Term | 360 |
| Current Interest Rate | 5.75% | Interest Rate | 3.25% |
| Current Payment Due Date | 12/01/10 | Post Modification Due Date | 04/01/2013 |
| Current Principal & Interest | $ 713.43 | Post Modification Principal & Interest | $ 596.12 |
| Current Payment Amount | $ 990.39 | Estimated Modified Payment amount | $ 873.08 |
| Amount Capitalizing | $ 28,076.17 | Contribution Required | $ 0.00 |

### Your important next steps

Please review the proposal with your client. If the terms meet your approval, the next step is to file a petition with the bankruptcy court to gain their consent to modify the first mortgage. Your client will need to continue to make their trial period payments if applicable while we are waiting for consent from the court. When you receive written consent, please forward it to my attention. Once received, we will send the loan documents to you and your attorney for original signatures. We will then withdraw any proof of claim in this case and process the modification as noted.

If the case has already closed, forward to us a copy of the release. If the terms are not satisfactory to you, please contact us and we will close the file with no further actions. **Approval of the loan modification is contingent on court consent or release of the case.**

**If your client is seeking a reaffirmation**

If your client intends to reaffirm, please provide us with the agreement specific to your district. With regard to a bankruptcy, we do not have a standard reaffirmation agreement to extend because requirements vary from district to district. Once we receive your district-specific agreement, we will complete the required entries and return it to your office for the required undue hardship analysis and filing with the respective court.

**Call me today if you have any questions**

If you or your client has questions about the information in this letter, please call me at the number below.

Sincerely,

Home Preservation Bankruptcy Specialist
MEGAN SHEPHERD
877-305-9951 Ext. 20586

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2012 Wells Fargo Bank, N.A. All rights reserved. Equal Housing Lender. NMLSR ID 399801

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:      THOMAS A. TRAVER            CASE NO.: 3:12-bk-03054-JAF

                    Debtor
_____/

## MOTION FOR APPROVAL OF MODIFICATION AGREEMENT

Debtor, THOMAS A. TRAVER, files this Motion for Approval of Modification Agreement, and in support would state:

1. In January of 2013, the Debtor entered into a loan modification with Wells Fargo Bank, N.A. (attached).

2. The loan modification would allow the Debtor the ability to successfully complete the Chapter 7 Bankruptcy.

3. The loan modification supersedes the proof of claim number six (6) filed by HSBC Bank USA, N.A., c/o Wells Fargo Bank, N.A. and the claim in no longer correct.

4. The loan modification has been recorded in the County Court, Duval County, in O.R. Book _____, Page _____.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was furnished to Aaron R. Cohen, Chapter 7 Trustee, by CM/ECF electronic filing; Wells Fargo Bank, N.A., c/o John Stumpf, Chairman/CEO/Managing Agent, 101 N. Phillips Avenue, Sioux Falls, SD 57104 and to HSBC Bank USA, N.A., c/o Irene Dorner, Chairman/CEO/President/Managing Agent, 1800 Tysons Blvd., McLean, VA 22102, by Certified Mail, postage pre-paid, and to Marie D. Campbell, Esquire, Attorney of Record for HSBC Bank USA, N.A., P O Box 25018, Tampa, Florida 33622-5018, U.S. Mail, postage pre-paid, this 29 day of January, 2013.

                              Law Offices of Mickler & Mickler

                              By:_____
                                 Bryan K. Mickler
                                 Florida Bar No. 091790
                                 Attorneys for Debtor(s)
                                 5452 Arlington Expressway
                                 Jacksonville, FL 32211
                                 (904) 725-0822/FAX: 725-0855



Date: 01/24/2013

BRYAN K MICKLER
5452 ARLINGTON EXPRESSWAY
JACKSONVILLE, FL 32211

| **Account Information** | |
|---|---|
| Fax: | 1-866-359-7234 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon -Thur, 7 a.m. -10 p.m.; |
| | Fri, 7 a.m. -8p.m.; Sat, 7 a.m. |
| | – 6 p.m.; |
| | Sun, 9 a.m. – 8p.m. CT |
| Loan number:   0226387215 | |
| Property address: 10515 OSPREY NEST DR W | |
| | JACKSONVILLE FL 32257 |

Subject:  Loan modification proposal
Borrower(s):
**THOMAS A TRAVER**
Bankruptcy No.: 1203054
Account No.: 0226387215
Property Address:
10515 OSPREY NEST DR W
JACKSONVILLE FL 32257

Dear BRYAN K MICKLER:

We have received consent from your office to discuss workout options with your client. We can offer your client a plan that we hope is workable to both parties.

The modification we propose includes the following changes:

| Current Terms | | Proposed Modified Terms | |
|---|---|---|---|
| Current Unpaid Balance | $ 108,897.53 | Modified Unpaid Balance | $ 136,973.70 |
| Current Maturity Date | 10/01/33 | Modified Mortgage Term | 360 |
| Current Interest Rate | 5.75% | Interest Rate | 3.25% |
| Current Payment Due Date | 12/01/10 | Post Modification Due Date | 04/01/2013 |
| Current Principal & Interest | $ 713.43 | Post Modification Principal & Interest | $ 596.12 |
| Current Payment Amount | $ 990.39 | Estimated Modified Payment amount | $ 873.08 |
| Amount Capitalizing | $ 28,076.17 | Contribution Required | $ 0.00 |

**Your important next steps**
Please review the proposal with your client. If the terms meet your approval, the next step is to file a petition with the bankruptcy court to gain their consent to modify the first mortgage.  Your client will need to continue to make their trial period payments if applicable while we are waiting for consent from the court. When you receive written consent, please forward it to my attention. Once received, we will send the loan documents to you and your attorney for original signatures. We will then withdraw any proof of claim in this case and process the modification as noted.

If the case has already closed, forward to us a copy of the release.  If the terms are not satisfactory to you, please contact us and we will close the file with no further actions. **Approval of the loan modification is contingent on court consent or release of the case.**




**If your client is seeking a reaffirmation**

If your client intends to reaffirm, please provide us with the agreement specific to your district. With regard to a bankruptcy, we do not have a standard reaffirmation agreement to extend because requirements vary from district to district. Once we receive your district-specific agreement, we will complete the required entries and return it to your office for the required undue hardship analysis and filing with the respective court.

**Call me today if you have any questions**

If you or your client has questions about the information in this letter, please call me at the number below.

Sincerely,

Home Preservation Bankruptcy Specialist
MEGAN SHEPHERD
877-305-9951 Ext. 20586

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2012 Wells Fargo Bank, N.A. All rights reserved. Equal Housing Lender. NMLSR ID 399801



## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

IN RE:          THOMAS A. TRAVER

                                  CASE NO.: 3:12-bk-03054-JAF

                 Debtor

_____

## ORDER GRANTING DEBTOR'S MOTION FOR APPROVAL OF MODIFICATION AGREEMENT

This case is before the Court on the Debtor's Motion for Approval of Modification Agreement with Wells Fargo Bank, N.A. At the hearing, it is

**ORDERED:**

1) The Debtor's Motion for Approval of Modification Agreement is granted.

2) The Debtor may enter into a loan modification with Wells Fargo Bank, N.A.

3) The loan modification supersedes the proof of claim number six (6) filed by HSBC Bank USA, N.A., c/o Wells Fargo Bank, N.A. and the claim in no longer valid.

DATED this ___10___ day of April, 2013, at Jacksonville, Florida.

                                 JERRY A. FUNK
                         United States Bankruptcy Judge

Copies furnished to:
Debtor
Bryan K. Mickler
Aaron R. Cohen, Chapter 7 Trustee
Wells Fargo Bank, N.A., c/o John Stumpf, Chairman/CEO/Managing Agent, 101 N. Phillips Avenue, Sioux Falls, SD 57104
HSBC Bank USA, N.A., c/o Irene Dorner, Chairman/CEO/President/Managing Agent, 1800 Tysons Blvd., McLean, VA 22102
Marie D. Campbell, Esquire, Attorney of Record for HSBC Bank USA, N.A., P O Box 25018, Tampa, Florida 33622-5018

EXHIBIT 6
PAGE 1 OF 1 PAGES

Doc # 2013105598 OR BK 16346 Page 636, Number Pages: 5, Recorded 04/29/2013
11:36 AM, Ronnie Fussell CLERK CIRCUIT COURT DUVAL COUNTY RECORDING $0.00

Case 3:13-cv-00841-BJD-JBK Document ID Filed 08/30/13 Page 50 of 78 PageID 230

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA
CIVIL ACTION

HSBC BANK USA, NATIONAL TRUST COMPANY,
AS TRUSTEE FOR THE HOLDERS OF MASTR
REPERFORMING LOAN TRUST 2006-1,

    Plaintiff,

vs.

CASE NO.    16-2008-CA-017122
DIVISION    ~~CV-D~~ FC-A

THOMAS A. TRAVER; THE UNKNOWN SPOUSE OF THOMAS A.
TRAVER N/K/A GINA J. TRAVER; NATURES FOREST ASSOCIATION,
INC.

    Defendant(s).

FILED
APR 05 2013

SPACE FOR RECORDING ONLY F.S.§695.26

*DEFAULT*

FINAL JUDGMENT

IT IS ADJUDGED THAT:

1. Plaintiff HSBC BANK USA, NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE

HOLDERS OF MASTR REPERFORMING LOAN TRUST 2006-1 3476 Stateview Boulevard MAC

#X7801-013, Fort Mill, SC 29715 is due:

| | |
|---|---|
| UNPAID PRINCIPAL BALANCE | $108,897.53 |
| INTEREST ON THE NOTE AND MORTGAGE FROM 08/01/2007 TO 03/18/2013 | 14,902.04 |
| PER DIEM INTEREST AT 5.75% FROM 03/19/2013 TO 04/03/2013 | 274.56 |
| TITLE SEARCH EXPENSES | 150.00 |
| ATTORNEYS' FEES TOTAL | $990.00 |
| FILING FEE | 361.00 |
| INVESTIGATION/SERVICE OF PROCESS | 495.00 |
| 3 Service of Process @ $45.00 | |
| 2 SERVICE OF PROCESS @ $40.00 | |
| 2 SERVICE OF PROCESS @ $140.00 | |
| CONTESTED HOURLY FEE | 668.00 |
| CERTIFIED COPY EXPENSE | 24.00 |
| PROPERTY INSPECTIONS | 75.00 |
| SUSPENSE BALANCE | -450.41 |

EXHIBIT 7
PAGE 1 OF 6

| | |
|---|---|
| ESCROW ADVANCE | 5,702.69 |
| BPO/APPRAISALS | 90.00 |
| CORPORATE ADVANCE CREDIT | -1,019.31 |
| OTHER INSPECTION FEES | 25.00 |
| TOTAL | ~~$131,185.10~~ |
| | $123,799.57 |

That shall bear interest at the rate established by Florida Statute.

2.    Plaintiff holds a lien for the total sum-superior to all claims, or estates of Defendant(s) on the following-described property in DUVAL County, Florida:

LOT 114, NATURE'S FOREST, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 41, PAGES 51, 51A AND 51B, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA.

A/K/A 10515 OSPREY NEST DRIVE JACKSONVILLE, FL  32257

3.    If the total sum with interest at the rate described in paragraph 1 and all costs accrued subsequent to this Judgment are not paid, the Clerk of this Court shall sell the property at a public sale on _May 28_, 2013, at 11:00AM EST, to the highest bidder for cash, except as prescribed in paragraph 4 , WWW.DUVAL.REALFORECLOSE.COM   in accordance with Chapter 45, Florida Statutes

4.    Plaintiff shall advance all subsequent costs of this and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for the documentary stamps payable on the certificate of title.  If Plaintiff is the purchaser, the bid may be assigned without further Order of this Court and the Clerk shall credit the Plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it as is necessary to pay the bid in full.

5.    On filing the Certificate of Title the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying:   first, all of Plaintiff's costs; second, documentary stamps affixed to the Certificate; third, Plaintiff's attorney's fees; fourth, the total sum due to Plaintiff, less the items paid, plus

HSBC BANK USA, NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF MASTR REPERFORMING LOAN TRUST 2006-1 vs. THOMAS
A. TRAVER, ET AL.
FINAL SUMMARY JUDGEMENT
CASE NO. 16-2008-CA-017122

AMENG  7
PAGE  2 OF  6  PAGE

interest at the rate prescribed in paragraph 1 from this date to the date of the sale; and by retaining any amount remaining pending the further Order of this Court.

6.      On filing the Certificate of Sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any.   Upon the filing of the certificate of title, the person named on the certificate of title shall be let into possession of the property.

7.      Jurisdiction of this action is retained to enter further orders that are proper including, without limitation, a deficiency judgment, if Plaintiff is not limited to in rem stay relief in an active bankruptcy case and/or if borrower(s) has not been discharged in bankruptcy or constructively served, together with additional attorney's fees, if appropriate. *Jurisdiction is expressly reserved to enter amended judgments containing updated amounts due and owing*

IF THIS PROPERTY IS SOLD AT PUBLIC   AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.

IF YOU ARE SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE.   IF YOU FAIL TO FILE A CLAIM YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

If you are the property owner, you may claim these funds yourself.   You are not required to have a lawyer or any other representation and you do not have to assign your rights to anyone else in order for you to claim any money to which you are entitled.   Please check with the Clerk of the Court, DUVAL County, Foreclosure Division

**501 West Adams St. Room 1208, Jacksonville, FL 32202, Phone: 904-255-2211, within ten (10) days**



after the sale to see if there is additional money from the foreclosure sale that the Clerk has in the registry of the Court.  If you decide to sell your home or hire someone to help you claim the additional money, you should read very carefully all papers you are required to sign, ask someone else, preferably an attorney who is not related to the person offering to help you, to make sure that you understand what you are signing and that you are not transferring your property or the equity in your property without the proper information.  If you cannot afford to pay an attorney, you may contact Jacksonville Area Legal Aid, Inc -  (904)356-8371, Three Rivers Legal Services, Inc.– Advice & Brief Service Unit -  (904)394-7450,  to see if you qualify financially for their services.  If they cannot assist you, they may be able to refer you to a local bar referral agency or suggest other options.  If you choose to contact Jacksonville Area Legal Aid, Inc -  (904)356-8371, Three Rivers Legal Services, Inc.– Advice & Brief Service Unit -  (904)394-7450,  for assistance, you should do so as soon as possible after receipt of this notice.

DONE AND ORDERED in Chambers, in DUVAL County, Florida, this ___3___ day of ___April___, 2013.

Circuit Judge
16-2008-CA-017122

Copies furnished to: Katherine E. Tilka, Esquire
Ronald R Wolfe & Associates, P.L.
P.O. Box 25018
Tampa, FL 33622-5018

Service List

THOMAS A. TRAVER
10515 Osprey Nest Drive W
Jacksonville, FL  32257

THE UNKNOWN SPOUSE OF THOMAS A. TRAVER N/K/A GINA J. TRAVER
10515 Osprey Nest Drive W
Jacksonville, FL  32257

NATURES FOREST ASSOCIATION, INC.
C/o Davis, Robin 10579 Clydesdale Dr. W.
Jacksonville, FL  32257

Service List

THOMAS A. TRAVER
10515 Osprey Nest Drive W
Jacksonville, FL  32257

THE UNKNOWN SPOUSE OF THOMAS A. TRAVER N/K/A GINA J. TRAVER
10515 Osprey Nest Drive W
Jacksonville, FL  32257

NATURES FOREST ASSOCIATION, INC.
C/o Davis, Robin 10579 Clydesdale Dr. W.
Jacksonville, FL  32257

EXHIBIT   7
PAGE   6   OF   6

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA
CIVIL ACTION

**FILED**

MAY 14 2013

~~Delb W. Small~~
CLERK CIRCUIT COURT

HSBC BANK USA, NATIONAL TRUST
COMPANY, AS TRUSTEE FOR THE HOLDERS
OF MASTR REPERFORMING LOAN TRUST
2006-1,
      Plaintiff,

vs.

CASE NO.: 16-2008-CA-017122
DIVISION: ~~CV-D~~
      FC·D

THOMAS A. TRAVER , et al,
      Defendant(s).
_____/

## NOTICE OF FORECLOSURE SALE

NOTICE IS HEREBY GIVEN pursuant to a Final Judgment of Mortgage Foreclosure dated

April 3, 2013 and entered in Case No. 16-2008-CA-017122 of the Circuit Court of the FOURTH Judicial Circuit in

and for DUVAL County, Florida wherein HSBC BANK USA, NATIONAL TRUST COMPANY, AS TRUSTEE FOR

THE HOLDERS OF MASTR REPERFORMING LOAN TRUST 2006-1 is the Plaintiff and   THOMAS A. TRAVER;

THE UNKNOWN SPOUSE OF THOMAS A. TRAVER N/K/A GINA J. TRAVER; NATURES FOREST

ASSOCIATION, INC.;  are the Defendants, The Clerk of the Court will sell to the highest and best bidder for cash at

WWW.DUVAL.REALFORECLOSE.COM  in accordance with Chapter 45, Florida Statutes

at 11:00AM, on  the  28th  day of  May , 2013, the following described property as set forth in said Final

Judgment:

      LOT 114, NATURE'S FOREST, ACCORDING TO THE PLAT THEREOF,
      RECORDED IN PLAT BOOK 41, PAGES 51, 51A AND 51B, OF THE
      CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA.

      A/K/A 10515 OSPREY NEST DRIVE, JACKSONVILLE, FL  32257

      Any person claiming an interest in the surplus from the sale, if any, other than the property owner as of

the date of the Lis Pendens must file a claim within sixty (60) days after the sale.

WITNESS MY HAND and the seal of this Court on  MAY 14 2013 , 2013.

FILE_NUMBER: F08085971

Serial: 23155713
DOC_ID: M003400

**\*F08085971\***

**\*M003400\***



Ronnie Fussell
Clerk of the Circuit Court

By: _JANA LOVELADY_
Deputy Clerk

Publish in Financial News and Daily Record

Invoice To: Ronald R Wolfe & Associates, P.L.
P.O. Box 25018
Tampa, Florida  33622-5018
F08085971   WELLSLPS-VA—Team 6 – F08085971

**See Americans with Disabilities Act
In accordance with the Americans Disabilities Act, persons needing special accommodation to participate in this proceeding should contact the individual or agency sending notice not later than seven (7) days prior to the proceeding at the address given or the notice.   Telephone: 904-630-2564; 1-800-955-8771 (TDD) or 1-800-955-8770 (v) via Florida Relay Service.
Ms. Amanda Gardner King
Court Administration
444 E. Duval Street
Jacksonville, FL  32202
Phone:       904-630-1212 ext 5393
Fax:          904-630-8363

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA
CIVIL ACTION

**FILED**

MAY 1 4 2013

CLERK CIRCUIT COURT

HSBC BANK USA, NATIONAL TRUST
COMPANY, AS TRUSTEE FOR THE HOLDERS
OF MASTR REPERFORMING LOAN TRUST
2006-1,

      Plaintiff,

vs.

THOMAS A. TRAVER , et al,

      Defendant(s).

_____/

CASE NO.: 16-2008-CA-017122
DIVISION: ~~CV-D~~

FC-D

## MOTION TO CANCEL FORECLOSURE SALE

Plaintiff, HSBC BANK USA, NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF

MASTR REPERFORMING LOAN TRUST 2006-1 files this, its Motion to Cancel Foreclosure Sale, and as grounds

therefore states as follows:

    1.     This Court has scheduled a foreclosure sale on May 28, 2013.

    2.     Plaintiff continues to review all loss mitigation options that may be available to resolve the instant

foreclosure without proceeding to foreclosure sale.

    WHEREFORE, Plaintiff respectfully requests this Court enter an Order Canceling Foreclosure Sale.

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by email, if

designated, or by U.S. Mail to all parties listed on the attached service list on this _13_ day of May, 2013.

Ronald R Wolfe & Associates, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
(813) 251-4766
(813) 251-1541 Fax
Address for Electronic Service: eservice@wolfelawfl.com

By: _____
    Trent A. Kennelly
    Florida Bar No. 0089100
  ☐ Victoria S. Jones
    Florida Bar No. 52252

FILE_NUMBER: F08085971

Serial: 23726311
DOC_ID: M011001



PAGE 9 OF 1 PAGE

# 10515 Osprey Nest Dr W, Jacksonville, FL 32257

**For Sale: $207,900**

Price Cut (Aug 21): -$2,000
Zestimate®: $175,772
Est. Mortgage: $828/mo

See current rates on Zillow
Get Prequalified

| | | | | |
|---|---|---|---|---|
| | **Photos** | Map | Bird's Eye | Street View |



View larger

| | |
|---|---|
| **Bedrooms:** | 3 beds |
| **Bathrooms:** | 2 baths |
| **Single Family:** | 2,043 sq ft |
| **Lot:** | 0.33 acres |
| **Year Built:** | 1986 |
| **Last Sold:** | May 1998 for $119,100 |
| **Heating Type:** | Forced air |

Get more info | Save this home | Get updates | Email | more ▼

### Description

ENJOY THE WATER VIEW FROM THE LARGE DECK IN BACK ! THIS HOME HAS BEEN FULLY RENOVATED WITH 3 BEDROOMS WITH NEW CARPET, 2 BATHROOMS W GRANITE AND TILE, FAMILY ROOM WITH FIREPLACE, DINING ROOM AND BAR, KITCHEN WITH GRANITE, TILE AND NEW STAINLESS STEEL APPLIANCES, INSIDE LAUNDRY, 2 CAR GARAGE, LOCATED IN MANDARIN AND MOVE IN READY !

| | | |
|---|---|---|
| **Days on Zillow** | **Cooling** | **Parking** |
| 14 | Central | Garage - Attached |
| **Basement Type** | **Fireplace** | **Floor Covering** |
| Unknown | Yes | Unknown |

▼ More | County website | See data sources

Zestimate | Listing price | Rent Zestimate | more ▼     1 year | 5 years | **10 years**

Loading chart...

## Get more information

Contact a local buyer's agent to learn more.



☑ **Erica Jolles** (37 reviews)
Call (904) 701-0873



☐ **Nate Watson** Write a review
Call (904) 372-8425



☐ **Sylvia Albers** Write a review
Call (904) 450-5579

Your Name

Phone

Email Address

I am interested in 10515 Osprey Nest Dr W, Jacksonville, FL 32257.

☐ I want to get pre-approved.

**Contact Agent**

Learn how to appear as the agent above



ALLSTATE CUSTOMERS CAN SAVE MORE

🖐 Allstate     QUOTE NOW

### Similar Homes for Sale



**10549 Roxbury Ln,...**
For Sale: $178,900
Beds: 3   Sqft: 1820
Baths: 2.0   Lot: 8,061



**4774 Secret Harbor...**
For Sale: $229,900
Beds: 4   Sqft: 1962
Baths: 2.0   Lot: 9,905

**4629 Trevor Creek...**
For Sale: $219,900
Beds: 3   Sqft: 1882
          Lot: 0.63
Baths: 2.0   ac



/0
EXHIBIT
PAGE 1 OF 7

## Zestimates

|  | Value | Range |  | 30-day change | $/sqft | Last updated |
|---|---|---|---|---|---|---|
| Zestimate | **$175,772** | $149K – $207K |  | +$3,300 | $86 | 08/27/2013 |
| Rent Zestimate | **$1,353/mo** | $1.2K – $1.4K/mo |  | +$7 | $0.66 | 08/26/2013 |
| Owner tools | Post your own estimate |  |  |  |  |  |
| Agent comment | You must sign-in and claim this listing in order to post a comment |  |  |  |  |  |

Market guide       Zillow predicts Mandarin Station - Losco home values will rise 7.6% next year, compared to a 6.4% rise for Jacksonville as a whole. Among Mandarin Station - Losco homes, this home is 39.5% more expensive than the midpoint (median) home, and is priced 13.5% more per square foot.

Learn more about forecast calculations or Mandarin Station - Losco home values.

less

## Price History

| Date | Description | Price | Change | $/sqft | Source |
|---|---|---|---|---|---|
| 08/15/2013 | Listed for sale | $209,900 | 68.3% | $102 | Core Realty LLC |
| 06/12/2013 | Sold: Foreclosure Auction | $124,700 | 4.7% | $61 | Public Record |
| 05/06/1998 | Sold | $119,100 | -- | $58 | Public Record |

## Neighborhood                                     View larger map

◉ Home Values

○ Listings

List of nearby homes

## Nearby Schools in Jacksonville

Data and ratings provided by GreatSchools.org

| | Grades | Distance |
|---|---|---|
| **Mandarin Oaks Elementary** (assigned) | PK-5 | 0.3 mi |
| **Mandarin Middle** (assigned) | 6-8 | 0.3 mi |
| **Mandarin High** (assigned) | 9-12 | 1.5 mi |
| **Christ's Church Academy** | PK-12 | 1.0 mi |
| **Jacksonville Adventist Academy** | PK-12 | 1.1 mi |
| **Crown Point Elementary** | PK-5 | 1.5 mi |
| **Clarke Jacksonville Auditory** | PK-2 | 1.6 mi |

**More schools in Jacksonville**

**Disclaimer:** School attendance zone boundaries are supplied by a third party provider and are subject to change. Check with the applicable school district prior to making a decision based on these boundaries.

## Get more information

Contact a local buyer's agent to learn more.

 **Erica Jolles**
(37 reviews)
Call: (904) 701-0873

 **Nate Watson**
Write a review
Call: (904) 372-8425

 **Sylvia Albers**
Write a review
Call: (904) 450-5579

Your Name

Phone

Email Address

I am interested in 10515 Osprey Nest Dr W, Jacksonville, FL 32257.

☐ I want to get pre-approved.

Contact Agent

Learn how to appear as the agent above

Browse more 32257 buyers' agents

## Listing provided by

SANDI CHAMBERS, Core Realty LLC , (904) 853-6018, source:
Listhub

Report problem with listing

See listings near 10515 Osprey Nest Dr W

Starting at the front of house I will work my way through one room at a time. The value I place on most items will be half their replacement cost because they are used but some items I had to secure the value via internet as they are collectors items.

BREAFAST NOOK

| | |
|---|---|
| 50.00 | Ceramic pod of dolphins with glass top for plants |
| 250.00 | hurricane survival kit - first aid, water, flashlights, batteries, canned food, dried milk, extra propane, battery operated radio |
| 275.00 | Singr portable sewing machine < 1 yr. old |
| 50.00 | Large dry chem. fire extinguisher |
| 50.00 | Custom levelor blinds |
| 85.00 | Pressure cooker & 48 mason jars |
| 25.00 | Bissell steam mop with 2 boxes of pads |

PANTRY

| | |
|---|---|
| 200.00 | 1 month's supply of soups, vegtables, sugar, ketchum, flour, cooking oil, crackers, pasta - in the bottom: large bottle Wisk detergent, gallon of downey, rug dr. rug shampoo |

EXHIBIT 11
PAGE 1 OF 1 PAGE

FRONT BEDROOM (OFFICE)

800.-  1 - LARGE MED. CHERRY ROLL TOP COMPUTER DESK
        IN LIKE NEW CONDITION

10.-   1 - PLASTIC DESK MAT

20.-   2 - ATTORNEY STYLE BOOK CASES

800.-  1 - LARGE BLONDE OAK BUFFET

150.-  1 - OVERSIZE SUEDE DESK CHAIR

       BATHROOM

100.-  1 - SOLID OAK VANITY WITH BUBBLE GLASS SINK &
        MATCHING MIRROR  READY FOR INSTALLATION)

300.-  - PERSONAL GROOMING ITEMS - HAIR DRYER - 4
        CURLING IRONS - 3 SETS OF HOT ROLLERS
        MARY AIRBRUSHING SET - MAKEUP - FOUNDATION, EYE
        SHADOW, LINER, MASCARA, & BLUSHERS W/ BRUSHES


       BACK BEDROOM

1200.- CUSTOM SLEEP WALL W/ 2 BEDS, BUILT IN CHEST
        OF DRAWERS, 2 LONG STORAGE DRAWERS, BUILT
        IN STAIRS, 2 MATTRESSES, SHEETS PILLOWS &
        BLANKETS

800    BLONDE OAK ENTERTAINMENT CENTER WITH 48" SONY
        TV, DVR, SEGA GENIUS GAME SYSTEM, X-BOX, MULTIPLE
        GAMES FOR EACH WITH CHARGERS & ADAPTERS

300    BOOKCASE WITH BOOKS & 4 DS GAMES +
        AT LEAST 10 GAMES

EXHIBIT  11
PAGE  2  OF  7  PAGES

MASTER BEDROOM

100. —   5 PIECE KING SIZE BEDROOM SUITE (THIS FURNITURE
WAS PRETTY WELL WORN OUT & NOT WORTH MUCH)

BACK YARD

150. —   1 - STAINLESS STEEL GAS GRILL
150. —   1 - REDWOOD DOG HOUSE WITH PORCH

LINEN CLOSET

250. —   BLANKETS, SHEETS, COMFORTERS TOWELS, PILLOW CASES,
SPARE PILLOWS

In additional to these things were
pictures in piano bench & in drawers. Certificates
of achievement from the boys hanging in their
room. The Beagle puppy I had to give
to the yard guy because I no longer have
a yard for her. So many things I lost
that can never be replaced & a dollar value
is just not enough.

EXHIBIT 11
PAGE 3 OF 7 PAGES

35.- 1 Stainless Steel deep fryer

1200.- 1 GE Stainless Steel glass top programable convection oven with matching over size microwave

900- 1 GE Stainless Steel large capacity side by side refrigator

GARAGE - MOST OF THIS GOT EMPTIED EXCEPT THE ATTIC.

350 1 7.5 FT. Noble fir Christmas tree. 860 frosted tips with 200 frosted pine cones & 1000 lights

250 1 50 gal. plastic tots full of assorted ornaments

250 1 set of 1955 Disney glass ornaments

600 6 50 gal. plastic totes full of winter clothes including 10 pair of ladies boots - multiple leather jackets, gloves & hats

IRREPLACEBLE

3000 1 camphor chest containing 1 Swedish silver tea service weighing about 4.5 lbs.

1750 1 antique cherry wardrobe

400 1 set prehung double glass french doors

60 6 assorted size life jackets

225 4 fresh water & 2 salt water fishing poles w/reels

EXHIBIT 11
PAGE 4 OF 7 PAGES

Kitchen :

| | |
|---|---|
| 175.00 | Sunbeam stand mixer |
| 100.00 | Stainless steel Blender |
| 150.00 | Food Processor |
| 99.00 | Vacuum system with 4 rolls of bags |
| 35.00 | Stainless steel toaster |
| 25.00 | Stainless steel spice rack full of spices |
| 210.00 | Large cutting board with 2 sets of carving knives |
| 60.00 | Stainless steel cutlery service for 16 |
| 125.00 | Stainless steel convection toaster oven |
| 150.00 | Full set of pots & pans with lids |
| 100.00 | Lead crystal glass service for 8 |
| 275.00 | Mikasa dinnerware for 8 including servicing platters, bowls, salt & pepper, cannisters, pie server, sugar & creamer, & cake plate w/cover |
| 75.00 | Hoover floor matic |
| 35.00 | 6 piece set of white corning casseroles |
| 50.00 | 8 piece set of blue corning glass baking dishes |
| 35.00 | Crystal cake stand with cover |
| 25.00 | Full set of silver plated serving pieces |
| 35.00 | 4 cookie sheets - 2 baking stones, 4 cake pans, 2 angel food cake pans, 1 bundt pan, 2 muffin tins, & 2 muffin top tins |
| $110 | 8 hurricane lamps & 2 gallons of fuel |
| 60 | 4 crystal serving pitchers 2-clear 1 green 1 blue |
| 50 | 1 large slow cooker - programmable |

WET BAR

400.00 | 1 Solid blonde oak china hutch with glass shelves

300.00 1 high top bar set with inlaid ceramic tile

200.00 2 6×8 area rugs

FAMILY ROOM

2000.- 1 med. cherry upright concert piano with solid wood sounding board

150.- 1 occasional table with matching mirror

800.- 1 4 ft. solid oak, hand carved armoire

250.- 1 matching hand carved side table

150.- 1 antique brass table lamp

THIS PAGE
DID NOT FAX
PLEASE ADD

PAGE 6 OF 7 PAGES

Expenses created by foreclosure displacing two families with no warning.

Tom & Gina Weaver:

Only apart. available that we could qualify for:

$900   deposit
$1800  1st & last mos. rent
250    rental truck
350    FPL start for electricity
100    St. Johns water mgmt. service
235    Comcast installation for cable, internet & T.V.
150    AT&T installation for home office
500    5 men @ $100 each to move
* 167  storage unit
1850   Paid to attorney to handle the load modification
23000  Payments made to the new loan.


Tom, Nicholas, & Kristian Weaver

1200   deposit
2400   1st & last mos. rent
250    installation of U-verse
250    2 wreckers to move 2 cars
500    Pet deposit
* 150  Child care due to school change

* continues on monthly basis

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA
CIVIL ACTION

**FILED**

MAR 2 8 2013

CLERK CIRCUIT COURT

HSBC BANK USA, NATIONAL TRUST
COMPANY, AS TRUSTEE FOR THE HOLDERS
OF MASTR REPERFORMING LOAN TRUST
2006-1,
       **Plaintiff,**

       **CASE NO.: 16-2008-CA-017122**
vs.       **DIVISION: CV-D**

THOMAS A. TRAVER , et al,
       **Defendant(s).**
_____/

## AFFIDAVIT OF ATTORNEYS' FEES AND COSTS

Before me, the undersigned authority, personally appeared ____KIMBERLY L. GARNO____ , Esq.,,
FLORIDA BAR
("Affiant") who, being duly sworn deposes and says as follows: NO. 84538

    1.    Affiant is an attorney employed by Ronald R Wolfe & Associates, P.L., (the "Firm"), counsel for

Plaintiff in the above-styled action.

    2.    This affidavit is made for the purpose of establishing the amount of attorneys' fees and cost to

which Plaintiff is entitled to pursuant the terms of the loan documents.

    3.    Affiant is over the age of 21, is authorized to make this affidavit and has personal knowledge of the

matters set forth herein.

    4.    As an attorney with the Firm, affiant familiar with the services rendered and all costs and expenses

incurred on behalf of the client in prosecuting the above-styled action.

    5.    The above-styled action is a residential mortgage foreclosure.  In a residential mortgage

foreclosure action, attorneys and/or paralegals employed by the Firm will perform, at a minimum, the following legal

services:

    A.    Prepare and review complaint (including, when necessary, any attachments required by

applicable Administrative Order and Fla. R. Civ. P.), summonses, *lis pendens* and civil cover sheet;

    B.    Review returns of service and prepare motions for default, where applicable;

    C.    Where filed, review answer(s) and /or any other papers and pleadings;

    D.    Review loan documents and correspondence;



EXHIBIT ___12___
PAGE ___1___ OF ___7___ PAGES

E.     Prepare and review the motion for summary judgment, affidavit of indebtedness, this affidavit, affidavit in support of reasonableness of attorney's fees, notice(s) of hearing, proposed final judgment, proposed notice of sale and final disposition form;

F.     Prepare and review correspondence between the Firm and client regarding the above-styled action; and,

G.     In the event this matter proceeds to sale, additional time will be incurred in preparing the bid and ensuring that all requirements have been met to proceed to sale.

6.     For all legal services performed in this residential foreclosure, the Firm has agreed to charge, and the client has agreed to pay, a flat rate of **$1200.00**.   In no event does Ronald R Wolfe & Associates, P.L. seek to recover attorney's fees greater than the amount billed to and paid by this client.

7.     The foregoing flat rate amounts represent the agreement between the Firm and its client for prosecuting a residential mortgage foreclosure action.

8.     In the event that any defendants file papers and/or pleading of a more contested nature requiring legal services beyond those outlined above, the Firm has agreed to charge, and the client has agreed to pay, an hourly fee up to $200.00 per hour for services related to these other issues.  (The Firm creates timekeeping records for any legal services performed at an hourly rate.  Those hourly rates will be detailed below, if applicable).

9.     In no event does the Firm seek to recover attorneys' fees greater than the amount billed to and paid by this client or permitted under the agreement.

10.     The Firm does not create any specific timekeeping records reflecting the amount of time spent on residential mortgage foreclosures due to this flat fee agreement and the administrative costs that would result.  The flat fee agreement was determined by taking into account many factors including, but not limited to, the following: the time and labor reasonably expended by lawyers in the community handling uncontested residential foreclosures; the complexity of a residential mortgage foreclosure action, the experience of the Firm in handling residential mortgage foreclosure actions; the industry standard for this type of loan, which is the discounted amount that this Firm and the client have agreed to as a reasonable flat fee for each residential mortgage foreclosure action given that the client will likely refer the Firm other residential mortgage foreclosure actions in the future; and, the current market conditions.

EXHIBIT  **12**

PAGE  **2**  OF  **7**  PAGES

11.     Fla. R. Civ. P. Form 1.996 appears to require a finding by the Court as to both the reasonable number of hours expended by the Firm and the reasonable hourly rate for those legal services.  For the purpose of assisting the Court with this determination only, and not as a representation as to actual time spent (the Firm does not create specific time keeping records), the firm estimates that the breakdown of the minimum time expended and fees charged by attorneys and paralegals in the typical uncontested residential mortgage foreclosure action prosecuted by the Firm would be as follows:

| Services Rendered | Time Expended |
|---|---|
| Preparation of Complaint, Summons, and Notice of Lis Pendens.  Including, where applicable, compliance with Administrative Orders and/or Fla. R. Civ. P. | 3.0 |
| Location of and service of process upon defendants; analysis of returns of service. | 0.5 |
| Review of service and preparation of Motions for Default, Affidavit of Non-Military Service, if appropriate. | 0.5 |
| Preparation of Motion for Summary Judgment, supporting affidavits, and Notice of Hearing. Including, where applicable, compliance with Administrative Orders and/or Fla. R. Civ. P. | 2.5 |
| Preparation of Final Judgment, Notice of Sale; Affidavit of Plaintiff's Counsel; Final Disposition Form; Preparation of Sale Documents. | 2.0 |
| Preparation and review of Correspondence between Firm and client throughout case. | 0.5 |
|  |  |
| Total Time Expended: | 9.0 |

12.     The foregoing estimate (the Firm does not create specific time keeping records), would result in total attorneys' fees of $1,575.00 if billed at an hourly rate of $175.00; however, as this estimated attorneys' fee breakdown exceeds the rate agreed upon by the Firm and the client and the amount billed to the client by the Firm in the above-styled action, the Firm only seeks to recover a flat rate of $1,200.00.



13.    In this particular case, the file is contested and Plaintiff's attorney has performed additional services and billed the following amounts:

| Input Date | Description | Hours | Rate | Total |
|---|---|---|---|---|
| | | | $150.00/hour Attorney | |
| | | | $95.00/hour Paralegal | |
| March 21, 2013 | PARALEGAL:  Prepared Witness and Exhibit List for trial scheduled for 04/03/13 | 0.20 | $95.00 | $19.00 |
| March 21, 2013 | PARALEGAL:  Prepared Notice for Trial scheduled for 04/03/13 | 0.20 | $95.00 | $19.00 |
| March 21, 2013 | PARALEGAL:  Preparation of the Affidavit as to Reasonable Attorney's Fees and the Affidavit of Plaintiff's Counsel Fees & Costs. 04/03/13 | 0.40 | $95.00 | $38.00 |
| March 19, 2013 | PARALEGAL notified client of upcoming trial for 04/03/13 | 0.20 | $95.00 | $19.00 |
| March 19, 2013 | PARALEGAL prepared letter to defendant for trial 04/03/13 | 0.20 | $95.00 | $19.00 |
| March 18, 2013 | Review and sign witness and exhibit list | 0.20 | $150.00 | $30.00 |
| March 18, 2013 | Review and sign notice of filing of copy of order setting trial or final hearing 04/03/13 | 0.20 | $150.00 | $30.00 |
| January 31, 2013 | 01/22/2013 Preparation for and attendance at status conference. | 1.66 | $150.00 | $249.00 |



14.     Affiant is also familiar with the costs and expenses that Ronald R Wolfe & Associates, P.L.

incurred on behalf of the Firm's client in this action.  These costs and expenses are as follows:

**COSTS:**

| | | |
|---|---|---:|
| A. | Title Charges: | $325.00 |
| | Title Search Fee        $175.00 | |
| | Title Examination Fee  $150.00 | |
| B. | Filing Fee | 361.00 |
| C. | Investigation/Service of Process | 495.00 |
| (see attached invoice) | | |
| D. | CERTIFIED COPY EXPENSE | 24.00 |

TOTAL COSTS:                                                    $1,205.00

**FEES**

| | |
|---|---:|
| Uncontested Flat Rate Attorney's Fees: | 840.00 |
| Uncontested Flat Rate Attorney's Fee for Sale | 150.00 |
| Contested/Hourly Attorney's Fees | 423.00 |

TOTAL FEES:                                                        1,413.00

**TOTAL FEES AND COSTS**                              $2,618.00

15.    The title search and exam cost includes amounts paid to third parties for data and information reviewed for title purposes.  New House Title, L.L.C is the title company utilized to perform the title work on this foreclosure action.  The owners of Ronald R Wolfe & Associates, P.L. own New House Title, L.L.C.

**FURTHER AFFIANT SAYETH NOT.**



By: _____

Florida Bar No. ~~KIMBERLY L. GARNO~~
~~FLORIDA BAR~~
~~NO. 84538~~

Ronald R Wolfe & Associates, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
(813) 251-4766
(813) 251-1541 Fax

The foregoing instrument was sworn to and subscribed before me this 26 day of March ,

2013, by ___~~KIMBERLY L. GARNO~~___ , Esq., who is personally known to me.
~~FLORIDA BAR~~
~~NO. 84538~~

_____
NOTARY PUBLIC, State of Florida

My commission expires:_____

```
EDUARDO A. FIGEAC
MY COMMISSION # EE 157278
EXPIRES January 4, 2016
Bonded Thru Notary Public Underwriters
```





**Excel Innovations**
18150 S. 88th Ave., Mokena, IL 60448

(708) 326-1410
TOLL FREE: (877) EXCEL-IN
FAX: (708) 478-5415

info@excelinnovations.com • www.excelinnovations.com • Lic.# 117-001418

# Invoice

| DATE | INVOICE NO. |
|---|---|
| 2/9/2009 | FDLG-21569 |

**BILL TO**

Florida Default Law Group
9119 Corporate Lake Dr.
Ste. 300
Tampa, Florida 33634

| FILE NO. | TERMS |
|---|---|
| F08085971 | Net 30 |

| DATE | SERVICE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 1/6/2009 | Serve | Service of Process:  Natures Forest Association, Inc. c/o Davis, Robin - Summons, Notice of Lis Pendens and Mortgage Foreclosure Complaint - Corporation on 1/6/2009 at 5:00 PM  Address:  10579 Clydesdale Dr. W., Jacksonville, FL  INV00666460 | 45.00 |
| 1/15/2009 | Serve | Service of Process:  Tenant #1 - Summons, Notice of Lis Pendens and Mortgage Foreclosure Complaint - NOT SERVED  Address:  10515 Osprey Nest Dr. W., Jacksonville, FL  INV00666461 | 45.00 |
| 1/15/2009 | Serve | Service of Process:  Traver, Thomas A. - Summons, Notice of Lis Pendens and Mortgage Foreclosure Complaint on 1/15/2009 at 7:21 PM  Address:  10515 Osprey Nest Dr. W., Jacksonville, FL  INV00666462 | 45.00 |
| 1/15/2009 | Serve | Service of Process:  The Unknown Spouse Of Thomas A. Traver - Summons, Notice of Lis Pendens and Mortgage Foreclosure Complaint on 1/15/2009 at 7:21 PM  Address:  10515 Osprey Nest Dr. W., Jacksonville, FL  INV00666463 | 40.00 |
| 1/15/2009 | Serve | Service of Process:  Tenant #2 - Summons, Notice of Lis Pendens and Mortgage Foreclosure Complaint - NOT SERVED  Address:  10515 Osprey Nest Dr. W., Jacksonville, FL  INV00666464 | 40.00 |
| 1/13/2009 | Serve | Service of Process:  Traver, Thomas A. - Summons, Notice of Lis Pendens and Mortgage Foreclosure Complaint - NOT SERVED  Address:  7033 Joshua Rd., Oak Hills, CA  INV00672108 | 140.00 |

FEIN NO. 26-1261432

| | |
|---|---|
| Payments/Credits | |
| **Balance Due** | |

Page 1

CAMDEN   12
PAGE   7   OF   7   PAGE



FILED

MAR 28 2013

CLERK CIRCUIT COURT

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA
CIVIL ACTION

HSBC BANK USA, NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HOLDERS OF MASTR
REPERFORMING LOAN TRUST 2006-1,
      Plaintiff,

                                   CASE NO.: 16-2008-CA-017122

vs.                                DIVISION: CV-D

THOMAS A. TRAVER; THE UNKNOWN SPOUSE OF THOMAS A. TRAVER N/K/A GINA J. TRAVER;
ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE
HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE,
WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS,
DEVISEES, GRANTEES, OR OTHER CLAIMANTS; NATURES FOREST ASSOCIATION, INC.;
      Defendant(s).
_____/

## AFFIDAVIT AS TO REASONABLE ATTORNEYS FEES

STATE OF FLORIDA         S
COUNTY OF HILLSBOROUGH   S

      BEFORE ME, the undersigned authority, personally appeared John Cullaro, who upon first being duly sworn

on oath, deposes and says:

    1.      I am an attorney at law duly authorized to practice in the State of Florida.

    2.      I have been active in the practice of law in Florida since January 1, 1996, and I am personally familiar

with the fees usually allowed Plaintiffs for the services of their attorneys in suits of the kind and nature in which this

affidavit is to be filed.

    3.      It is my opinion that the time and services rendered by the attorneys are reasonable and necessary to

represent adequately and appropriately the Plaintiff in this cause.

    4.      I am familiar with Rule 4-1.5(b) of the Rules Regulating the Florida Bar, and have taken into

consideration the factors set forth in such Rule for the determination of reasonable attorney's fees.

    5.      I am also familiar with and have considered the dictates of the Florida Supreme Court in the case of

Florida Patient's Compensation Fund vs. Rowe, 472 So.2d 1145 (Fla 1985) for the determination of reasonable

attorney's fees.

FILE_NUMBER: F08085971

Serial: 23140277
DOC_ID: M050001



6.     In arriving at my opinion of the value of reasonable attorney's fees in this action, I have utilized and considered the following criteria:

   a.     The time and labor required, the novelty, complexity and difficulty of the questions involved, and the skill requisite to perform the legal services properly.

   b.     The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.

   c.     The fee or rate of fee customarily charged in the locality for services of a comparable or similar nature.

   d.     The amount involved and the results obtained.

   e.     The time limitations imposed by the client or by the circumstances.

   f.     The nature and length of the professional relationship with the client.

   g.     The experience, reputation and ability of the lawyer or lawyers performing the services.

   h.     Whether the fee is fixed or contingent.

7.     Ronald R Wolfe & Associates, P.L. does not keep records of its time while it represents the Plaintiff pursuant to a flat fee arrangement until such a time as the matter becomes contested.  I have not reviewed specific time keeping records for the initial services performed before the file became contested.  I have had the opportunity to review the time records for the hourly charges.



8.      Based upon my review as set forth, it is my opinion that a reasonable attorney's fee and paralegal fee

is $1,413.00.

FURTHER AFFIANT SAYETH NAUGHT. 

_____
John Cullaro

The foregoing instrument was subscribed and sworn to before me this 26 day of March, 2013, by John Cullaro
who is personally known to me.

_____
NOTARY PUBLIC, State of Florida
My Commission Expires: _____

WELLSLPS-VA---Team 6 – F08085971- F08085971