## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

### CASE NO.  3:13-cv-00841-UATC JRK

THOMAS A. TRAVER and
REGINA LIST TRAVER,

        Plaintiffs,

vs.

WELLS FARGO BANK, N.A. a/k/a
WELLS FARGO HOME MORTGAGE and
RONALD R. WOLFE AND ASSOCIATES, P.L.,

        Defendants.

_____/

### DEFENDANT, WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR LACK OF JURISDICTION, AND ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") moves to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction and, alternatively, for failure to state a claim upon which relief can be granted.  In support of this Motion, Wells Fargo submits the following memorandum of law:

## I.      INTRODUCTION AND PROCEDURAL BACKGROUND

On July 16, 2013, Plaintiffs filed the Complaint in this action based on the foreclosure sale of Plaintiffs' real property located in Duval County.  [D.E. 1].  Plaintiffs alleged that they had entered into a loan modification with Wells Fargo through a separate Bankruptcy Action, and therefore, their property should not have been foreclosed.  *Id.*  On August 12, 2013, Defendant filed a motion to dismiss the Complaint for (1) lack of jurisdiction based on the lack of diversity among the parties, and Plaintiffs' failure to allege federal question jurisdiction, and (2) failure to state a claim upon which relief could be granted because of Plaintiffs' failure to

attach a signed loan modification agreement to the Complaint in violation of the Florida Debtor Statute of Frauds.  [D.E. 6].

In response, Plaintiffs filed the instant Amended Complaint that fails to correct any of the fatal deficiencies of the original complaint.  Specifically, as with the original Complaint, the Amended Complaint is based on the proceedings stemming from the foreclosure Complaint filed by Wells Fargo against Plaintiffs, Thomas Traver and Regina Traver ("Plaintiffs") on December 31, 2008, in the Fourth Judicial Circuit Court for Duval County for the real property located at 10515 Osprey Nest Drive West (the "Foreclosure Action").  *See* Am. Complaint, ¶34.

During the pendency of the Foreclosure Action, Defendant Thomas Traver filed for Chapter 13 Bankruptcy on May 4, 2012 as Case No.:3:12-BK-03054-JAF (the "Bankruptcy Proceeding").  *Id.*, ¶35.  In the Bankruptcy Proceeding, on January 29 2013, Mr. Traver filed a Motion for Approval of Modification Agreement, attaching Wells Fargo's January 24, 2013 letter to Plaintiffs, which proposed modification terms for Plaintiffs' mortgage, and which specifically noted, *inter alia*, "[i]f the terms meet your approval, the next step is to file a petition with the bankruptcy court to gain their consent to modify the first mortgage …[w]hen you receive written consent, please forward it to my attention.  Once received, we will send the loan documents to you and your attorney for original signatures." (*id.*, ¶43; & Ex. 4).

Curiously, the Amended Complaint does not contain the March 20, 2013 letter from Wells Fargo to Thomas Traver, that was attached to the original Complaint [D.E. 1, Ex. 7], informing Thomas Traver that the proposed loan modification was approved subject to certain conditions, including that the actual modification agreement would "follow in the mail" and that *the agreements (sic) must be signed, notarized, and returned to us within 5 business days of receipt.*" *Id.*, 41 & Ex. 7 (emphasis added).  And, although the Amended Complaint alleges that

"Traver signed and returned the mortgage modification agreement to Wells Fargo" (*id.*, ¶132), there are no allegations as to the date this agreement was signed and returned to Wells Fargo, and an executed agreement is conspicuously absent from the attachments to the Amended Complaint (and the original Complaint).

On March 7, 2013, the Court in the Foreclosure Action entered an Order setting the case for trial on April 5, 2013, and following the trial, the Court entered a Final Judgment of Foreclosure scheduling the sale for May 28, 2013. *Id.*, ¶ 46 & Ex. 7.

After the final judgment of foreclosure was already entered, on April 10, 2013, the Bankruptcy Court entered an Order granting the Motion for Approval of Modification Agreement in the Bankruptcy Proceeding, and noting that the "Debtor *may* enter into a loan modification with Wells Fargo Bank, N.A." *Id.*, ¶ 44 & Ex. 6 (emphasis added). On May 14, 2013, Wells Fargo filed a Motion to Cancel the Sale in the foreclosure action in view of the loss mitigation negotiations taking place in the Bankruptcy Proceeding, however, this Motion was denied by the State Court, and the sale took place. *Id.*, ¶¶ 49 & 50. The property was sold to Blue River Homes, LLC, who filed a request for Writ of Possession, which was executed on June 20, 2013. *Id.*, ¶¶ 52-54.

Plaintiffs assert in the Amended Complaint that this Court has jurisdiction over this action based on (a) federal question jurisdiction because the "offer and acceptance were made through United States Bankruptcy Court by a modification order entered in the United States Bankruptcy Court …" *Id.*, ¶5; and (b) diversity of citizenship jurisdiction. *Id.*, ¶6. Notably, Plaintiffs' allegations of citizenship describe (i) Plaintiffs as citizens of Florida, (ii) Wells Fargo Bank, N.A. as a national bank with its principal place of business in San Francisco, California, (iii) Wells Fargo Home Mortgage as an "operating unit of Wells Fargo Bank, N.A." located in

Des Moines, Iowa, and (iv) Ronald R. Wolfe and Associates, P.C., as a professional corporation formed under the laws of the State of Florida. *Id.*, ¶¶1-4.

Based on these facts, Plaintiffs assert five Counts (three counts against Wells Fargo) for: (1) Breach of Contract against Wells Fargo; (2) Fraudulent Misrepresentation against Wells Fargo; (3) Florida Deceptive and Unfair Trade Practices Act, §501.201, et seq. against Wells Fargo; (4) Malpractice against Wolfe, P.L.; and (5) FCCPA Violations against Wolfe, P.L.

However, the Amended Complaint fails once again because the Court does not have subject matter jurisdiction to hear this matter, and therefore it should be dismissed. Additionally, the Complaint fails to state a claim upon which relief may be granted, and should be dismissed in its entirety *with prejudice*.

## II.   MEMORANDUM OF LAW

### A.   Plaintiffs' Complaint Should Be Dismissed Due to Lack of Jurisdiction.

#### 1.   Plaintiffs Have Not Established That Federal Subject Matter Jurisdiction Exists.

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to "contain (1) a short and plain statement of the grounds on which the court's jurisdiction depends . . . ." Fed. R. Civ. P. 8(a); *Rampassard v. Clinton*, No. 08-22309-CIV, 2008 WL 4097662, at *1 (S.D. Fla. Aug. 29, 2008). In particular, when invoking federal question jurisdiction, Plaintiffs must identify on the face of the well plead complaint the federal question(s) upon which their claims are based. 28 U.S.C. § 1331; *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) ("[w]hether a claim arises under federal law is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint"). Plaintiffs have not met their burden to establish federal jurisdiction exists in this case.

Here, Plaintiffs assert that this Court has federal question jurisdiction because the "offer and acceptance were made through United States Bankruptcy Court by a modification order entered in the United States Bankruptcy Court …"   *See* Am. Complaint, ¶5.  Additionally, Plaintiffs include several paragraphs of allegations in the Amended Complaint about the purpose of the Troubled Asset Relief Program ("TARP"), the Home Affordable Modification Plan ("HAMP") program, its alleged guidelines, and that Plaintiffs hoped to modify their loan through HAMP by filing the Bankruptcy Action (*id.*, ¶¶9-30 & 35).  However, Plaintiffs make no attempt to identify any federal questions to be answered or to otherwise establish that federal jurisdiction exists.

Significantly, although Plaintiffs allege that the mortgage modification agreement was a contract entered into during the Bankruptcy Action, and although Plaintiffs include over twenty paragraphs of general allegations concerning Plaintiffs' obligations under HAMP, Plaintiffs do not attach a mortgage modification agreement, or any other documents to suggest that (1) there actually was a finalized and executed agreement between the parties or (2) that this agreement was pursuant to HAMP.  Indeed, the only document attached to the Amended Complaint that includes loan modification terms, is a letter dated January 24, 2013, proposing terms for a modification and outlining the steps required to accept, and contains no mention of HAMP or anything to suggest that the modification was approved pursuant to anything other than Wells Fargo's own modification program.  *Id.*, Ex. 4.[1]

These allegations are plainly insufficient to establish the existence of any federal questions in this case because Plaintiffs do not cite to any federal statutes, or make any attempt to

---

[1] Although the original Complaint also contained a March 20, 2013 letter informing Thomas Traver that his loan modification, was approved subject to certain conditions (D.E. 1, Ex. 7), this letter is not an attachment to the Amended Complaint.  However, this letter also does not mention HAMP or any other federal program.  *Id.*

establish any connection between the allegations and this Court's alleged jurisdiction.  *See, e.g.,*
*Davis v. Ryan Oaks Apts.*, 357 Fed. Appx. 237, 237 (11th Cir. 2009) (dismissing complaint
where plaintiff failed to allege a colorable claim arising under the U.S. Constitution or federal
law sufficient to create a federal question); *Houman v. Lewis*, No. 09-82271-CIV, 2010 WL
2331089, at \*2 (S.D. Fla. June 10, 2010) (granting motion to dismiss where plaintiff failed to
establish any connection between the federal statutes cited as a basis for federal jurisdiction and
his allegations); *Kratt v. Burns*, No. 3:08cv464/RV/EMT, 2009 WL 1919699, at \*3-\*4 (N.D. Fla.
July 2, 2009) (granting motion to dismiss and dismissing federal claims with prejudice for failure
to sufficiently plead a federal question where plaintiff failed to show facts sufficient to
demonstrate applicability of federal laws, such as the FDCPA).

Additionally, the grounds upon which Plaintiffs attempt to confer federal questions
jurisdiction on the Court are insufficient under the circumstances.

     (a)    <u>The Bankruptcy Proceeding Does Not Confer Federal Question
Jurisdiction</u>

As stated by the Eleventh Circuit, "[t]he usual articulation of the test for determining
whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding
could conceivably have an effect on the estate being administered in bankruptcy. The proceeding
need not necessarily be against the debtor or against the debtor's property. An action is related to
bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action
(either positively or negatively) and which in any way impacts upon the handling and
administration of the bankrupt estate." *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th
Cir. 1990) *quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

Moreover, "[t]he fact that property was once owned by a bankrupt does not supply
federal jurisdiction of all future disputes concerning the property. The broad jurisdictional

6

provisions set forth in § 1334 grant the district courts power to supervise the entire restructuring of the debtor's estate. However, once property is sold, further disputes have nothing to do with the debtor's estate." *Matter of Lemco Gypsum, Inc.* at 789 (internal citations omitted).

*Matter of Lemco Gypsum, Inc.* is instructive. In that case, the debtor's landlord filed a motion in the bankruptcy court seeking an award of damages against the purchaser of the debtor's property because the purchaser failed to remove the property from the landlord's land. 910 F.2d at 786. The Eleventh Circuit held that the bankruptcy court lacked jurisdiction over the dispute because the outcome of the dispute – an order requiring the purchaser to pay damages directly to the landlord – would have no conceivable effect on the bankruptcy estate. *Id.* at 789. *See also In re Boone*, 52 F.3d 958, 960 (11th Cir. 1995) (holding that Chapter 7 debtors' claim against mortgagee for intentional interference with the sale of their house fell outside the jurisdiction of the bankruptcy court, absent evidence of any effect that the outcome of the claim could have on their bankruptcy estate, and noting that "[t]]he conduct giving rise to the claim occurred after the petition in bankruptcy, and therefore the cause of action [was] not property of the estate.").

Here, since as Plaintiffs allege, their property was already sold to third parties (*see* Am. Complaint, ¶¶52-54), and the property is therefore no longer a part of the bankruptcy estate, this case is indistinguishable from *Matter of Lemco Gypsum, Inc.* and *Boone*, since the desired outcome of this dispute – an award of damages to the Plaintiffs, has no outcome on the now closed Bankruptcy Proceeding.

Accordingly, this Court does not have federal question jurisdiction based on the Bankruptcy Proceeding.

(b)    HAMP Does Not Confer Federal Question Jurisdiction

To the extent Plaintiffs' allegations related to HAMP are construed as an attempt to confer federal question jurisdiction over the state law claims alleged in the Amended Complaint, federal question jurisdiction exists only if the Complaint "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *See Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.* 545 U.S. 308, 314 (2005).

"While, in *Grable & Sons,* the Court hinted that this test would be met in only the rare state law case, just a year later it confirmed that only a 'slim category' of cases would qualify for federal jurisdiction under the rule." *See Meyer v. Health Management Associates, Inc.*, 841 F.Supp.2d 1262, 1267 (S.D.Fla. 2012) *quoting Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 701 (2006).  Further, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  *Daout v. Greenspoon Marder P.A.*, 2013 WL 2329931, 4 (S.D.Fla. May 28, 2013) *quoting Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 813 (1986). "The fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction—the implicated federal issue must be *substantial*." *Dunlap v. G & L Holding Group,* Inc., 381 F.3d 1285, 1291-1292 (11th Cir.2004) (emphasis in original).

Here, none of the documents attached to the Amended Complaint that allegedly prove that a contract for a loan modification exists between the parties, even mentions HAMP, any other federal program, or any specific federal law that was allegedly violated.  However, even if the alleged approved modification was a HAMP modification, HAMP does not create, and

8

cannot be enforced through, a private cause of action.  As the Eleventh Circuit has held, neither

the Emergency Economic Stabilization Act, 12 U.S.C. § 5201 (2008) ("EESA"), which created

HAMP, nor HAMP "expressly creates a private right of action for borrowers against loan

servicers."  *Miller v. Chase Home Finance, LLC*, 677 F.3d 1113, 1117 (11th Cir. 2012).  The

Eleventh Circuit further held "it is clear that no implied right of action exists" under HAMP or

EESA.  *Id.  See also Ozoria v. Deutsche Bank Trust Co. Americas*, 2011 WL 1303270, *2

(S.D.Fla. Mar. 31, 2011) (holding that there is no private cause of action under HAMP); *Singh v.

Wells Fargo Bank,* 2011 WL 66167, *7 (E.D.Cal. Jan. 7, 2011) (collecting cases) ("[I]t is well

established that there is no private cause of action under HAMP.").

Further, the "substantiality" requirement for the presence of a federal issue would not be

satisfied simply because of the presence of a HAMP agreement.  Specifically, whether any of the

Defendants violated HAMP guidelines by allegedly breaching the parties' contract or by

processing anything incorrectly related to the contract, is a question of state contract law and

does not turn upon federal law.  Indeed, multiple federal district courts have consistently held

that state law claims alleging the defendant failed to follow HAMP guidelines do not fall within

the "special and small" subset of cases in which 28 U.S.C. § 1331 applies.  *See, e.g., Rockridge

Trust v. Wells Fargo, N.A.*, 2013 WL 3200631, *20-21 (N.D.Cal. June 24, 2013) (internal

citations omitted) ("To the extent Plaintiffs incorporate HAMP violations in their [state law]

causes of action … this court joins many other district courts in concluding that no federal

question is presented merely because Plaintiff's state law claims may incorporate or turn upon

allegations of HAMP violations."); *Zeller v. Aurora Loan Services, LLC,* 2010 WL 3219134, *2

(W.D.Va. Aug. 10, 2010) ("[t]he sole count in Plaintiff's complaint is a state law breach of

contract claim, and Defendant has put forth no reason as to why this case fits within the "special

and small" subset of cases where §1331 jurisdiction applies, particularly where federal law plainly did not create an applicable private right of action."); *Delgadillo v. Countrywide Home Loans, Inc.,* 2009 WL 5064943, *2 (C.D.Cal. December 23, 2009); ("there is no federal question presented merely because Plaintiffs' state law claims may incorporate or turn upon allegations of HAMP violations ...").[2]

For these reasons, Plaintiffs' Amended Complaint fails to sufficiently allege the existence of federal question jurisdiction, and it should be dismissed.

### 2.  Plaintiffs Have Not Alleged Diversity Jurisdiction

In order for the Court to exercise diversity jurisdiction (the only other basis for federal jurisdiction) the parties must be citizens of different states and the amount in controversy must exceed $75,000.00.  *See* 28 U.S.C. § 1332.   The burden is on the plaintiff to demonstrate that the Court has diversity jurisdiction. *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985); *see also* Fed.R.Civ.P. 8(a)(1) (requiring "a short and plain statement" of the jurisdictional basis). Diversity jurisdiction requires "complete diversity," meaning that no plaintiff may be a citizen of the same state as any defendant.  *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir.1999) (internal citations omitted).

Here, Plaintiffs' allegations of citizenship plainly show that Plaintiffs and Defendant, Wolfe, P.L. are citizens of Florida.   *See* Am. Complaint, ¶¶ 1 & 4.  Although Plaintiffs allege that Wells Fargo is a citizen of California, *complete* diversity is required, meaning no plaintiff can be a citizen of the same state as *any* defendant. *See* 28 U.S.C. § 1332(a); *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 829 (1989) ("When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute

---

[2] *See also Maxwell v. Aurora Loan Services, LLC*, 2011 WL 4014327, *2 (E.D.Mo. Sept. 9, 2011); *Carlos v. Bank of Am. Home Loans,* 2011 WL 166343 (C.D.Cal. Jan. 13, 2011).

for each defendant or face dismissal"); *Am. Tobacco Co.*, 168 F.3d at 412 ("Where jurisdiction is predicated on diversity of citizenship, all plaintiffs must be diverse from all defendants."). *Heron v. Granchelli*, 2011 WL 6937501, *3 (M.D. Fla. Nov. 21, 2011) (holding that there was no diversity jurisdiction where the plaintiff and two of the defendants were citizens of the state of Florida).

Accordingly, the Amended Complaint does not set forth any basis for the Court to exercise diversity jurisdiction and it should be dismissed.

**B.    Plaintiffs' Complaint Should Be Dismissed for Failure to State a Claim.**

Alternatively, if the Court were to find that subject matter jurisdiction exists, the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal").  "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face."  *Sinaltrainal v. The Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

Here, even if Plaintiffs had properly alleged federal question jurisdiction (which they did not), the Complaint fails to state a claim against Wells Fargo.  Specifically, Plaintiffs allege three

counts against Wells Fargo, the first for Breach of Contract based on Plaintiffs' alleged acceptance of the offer to modify his loan set forth in the January 24, 2013 letter; (2) Fraudulent Misrepresentation; (3) and violations of the Florida Deceptive and Unfair Trade Practices Act, §501.201, et seq. ("FDUTPA").

1.    The Breach of Contract Claim Fails Because There Is No Written Agreement

At the outset, the breach of contract claim fails for Plaintiffs' failure to attach the alleged modification agreement to the Complaint.  Pursuant to the Florida Bank Statute of Frauds, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."  Fla. Stat. § 687.0304(2) (emphasis added).  Importantly, a "credit agreement" under the Bank Statute of Frauds includes "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." *Id.* at (1)(a).

Here, although Plaintiffs allege that a modification agreement exists (Am. Complaint, ¶ 64), Plaintiffs only attach an Order from the Bankruptcy Court that states that the debtors *may* enter into a loan modification with Wells Fargo (*id.*, Ex. 6), and a letter from Wells Fargo (*id.*, Ex. 4) that offer Plaintiffs the opportunity to enter into a loan modification subject to certain conditions.  There is however, no signed agreement attached to the Complaint nor are there any allegations that Wells Fargo actually signed a written loan modification agreement.

Therefore, Plaintiffs' claim for breach of contract is barred by the Statute of Frauds and must be dismissed.  *See University Creek Associates, II, Ltd. v. Boston American Financial Group, Inc.*; 100 F.Supp.2d 1345 (S.D.Fla. 2000) (holding that letter and attached quote sheet sent from employee of commercial lender to borrower, who was seeking funds to acquire real

12

property, merely expressed lender's interest in an agreement and did not satisfy Florida's Banking Statute of Frauds); *Eboni Beauty Academy v. AmSouth Bank of Florida*, 761 So.2d 481 (Fla. 5th DCA 2000) (Debtor's claim that bank breached promise to make construction loan was barred by statute of frauds for credit agreements, where there was no writing setting forth terms and conditions of loan); *Puff 'N Stuff of Winter Park, Inc. v. Bell*, 683 So.2d 1176 (Fla. 5th DCA 1996) (holding that lender Statute of Frauds barred borrowers from maintaining actions based on lender's oral promise to extend credit, notwithstanding borrowers' claim that oral promise to loan money may be termed fraud in the inducement).

Accordingly, the breach of contract claims fails to state a claim upon which relief can be granted.

2.   <u>The Fraudulent Misrepresentation Claim Fails Because It is Barred By the Litigation Privilege And It Has Not Been Pled With Particularity</u>

In the second count against Wells Fargo, alleging fraud, Plaintiffs allege that the January 24, 2013 letter attached to their Motion for Approval of Modification Agreement filed with the Bankruptcy Court, was "a material misstatement of present intent" because Wells Fargo secretly planned to continue with the foreclosure process and did complete the foreclosure process. *See* Am. Complaint, ¶¶ 72-79.

In *Levin, Middlebrooks, Mabie, Thomas Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606 (Fla. 1994), the Florida Supreme Court defined the contours and reach of the absolute privilege that attaches to statements made and conduct involved in the course of judicial proceedings.  In addition to traditional torts of libel, slander, and defamation, the court held that historically even torts of perjury and fraud based on statements made in connection with a judicial proceeding are not actionable under the absolute immunity afforded to parties in those proceedings. *Id.* at 607-08 (citing *Wright v Yurko*, 446 So. 2d 1162 (Fla. 5th DCA 1984)).

13

Ultimately, the Supreme Court held that this absolute immunity applies to any statement or conduct so long as the statement or act has some relation to the proceedings:

> [W]e find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding.

*Id.* at 608.  *See also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole,* 950 So. 2d 380, 384 (Fla. 2007) ("litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin"). Moreover, this privilege applies not only to conduct occurring during the course of judicial proceedings, but also to conduct necessarily preliminary thereto. *See Boca Investors Group, Inc. v. Potash*, 835 So. 2d 273, (Fla. 3d DCA 2002), *approved, Echeverria*, 950 So. 2d at 384; *Burton v. Salzberg*, 725 So. 2d 450 (Fla. 3d DCA 1999).  *See also Ange v. State*, 98 Fla. 538, 123 So. 916 (1929), *receded from in part, Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992)(applying qualified immunity to defamatory statements made prior to judicial proceeding).

In *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1302-03 (11th Cir. 2003), the Eleventh Circuit applied Florida's absolute litigation privilege to affirm dismissal of claims of fraud, conspiracy, abuse of process, intentional infliction of emotional distress, tortious interference and deceptive and unfair trade practices based on defendant's destruction of evidence and fraudulent statements connected with previous litigation and settlements. Likewise, in *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1274-76 (11th Cir. 2004), the Eleventh Circuit applied the absolute litigation privilege as defined in *Levin* to affirm dismissal of claims of tortious interference and conspiracy to defraud based on statements and comments made during the course of settlement discussions with regard to an underlying litigation matter. Similarly, in *Williams v. Carney*, 157 Fed.Appx. 103, 107 (11th Cir. 2005), the Court held that

14

"absolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding."

Here, Plaintiffs' allegations are all based on Wells Fargo's alleged fraudulent conduct in sending them a letter proposing modification terms in connection with the Bankruptcy Action that Plaintiff Thomas Traver filed, and based on Wells Fargo's alleged "secret intention" to continue with the foreclosure process in the Foreclosure Action. *See* Am. Complaint, ¶¶ 70- 81. These allegations are plainly based on conduct occurring in two judicial proceedings and therefore, Wells Fargo is absolutely immune from any civil liability based thereon.

Further, even if the litigation privilege did not apply to bar this claim (it does), pursuant to Federal Rule of Civil Procedure 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See* Fed. R. Civ. P. 9(b). Rule 9(b) "may be satisfied if the complaint sets forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *See Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1370 (11th Cir. 1997) (internal citations omitted); *Serefex Corp. v. Hickman Holdings LP*, 695 F. Supp. 2d 1331, 1343 (M.D. Fla. 2010) (the particularity requirements of Rule 9(b) likewise apply to claims grounded in fraud).

In this case, the claims fail to meet the requirements of Rule 9(b). Plaintiff does not allege any facts specific to Wells Fargo's "secret intentions" to complete the foreclosure process or to mislead Plaintiffs in any way. Further, Plaintiffs' characterization of the terms of the January 24, 2013 letter are flawed because the letter clearly states that it requires written consent

form the Bankruptcy Court for modification approval, and "[o]nce received, we will send the loan documents to you and your attorney for original signatures." *See* Am. Complaint, Ex. 5. Plaintiffs fail to allege any dates or specifics as to when they received loan documents for signature, when they were signed and returned, or when their loan modification was confirmed.

As such, to the extent these claims are based on fraud, they fail as a matter of law and should be dismissed. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064 (11th Cir. 2007) (dismissal of fraud counts where plaintiff failed to identify individuals who participated in the alleged fraud, the dates of the alleged fraud, and how the defendants' conduct furthered the commission of the alleged fraud); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (dismissing complaint because plaintiff "failed to allege the who, what, where, when, and how" of the allegedly fraudulent submissions).

Accordingly, the claim for fraudulent misrepresentation fails to state a claim upon which relief can be granted.

3.    The FDUTPA Claim Fails Because Wells Fargo Is Expressly Exempt From Liability Pursuant to the Terms of The Statute

Finally, in the third Count against Wells Fargo, Plaintiffs allege violations of FDUTPA based upon the same conduct alleged in the second count for fraud.

At the outset, FDUTPA expressly exempts national banks, such as Wells Fargo from its scope. *See World Trade Center Properties, L.L.C. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 161 (2d Cir.2003) ("Wells Fargo is a national bank . . ."). *See also* Fla. Stat. § 501.212(4)(c) (2008) (exempting "banks or savings and loan associations regulated by federal agencies" from the provisions of the statute; *see also Bankers Trust Co. v. Basciano*, 960 So.2d 773, 779 (Fla. 5th DCA 2007) ("FDUTPA clearly excludes banks from its grasp.").

16

Additionally, even if FDUTPA were applicable to Wells Fargo (it is not), the claims fails for the reasons discussed above in response to the second count alleging fraud.

## III.    CONCLUSION

For the reasons discussed above, Wells Fargo respectfully requests the Court to dismiss the Amended Complaint in its entirety for lack of subject matter jurisdiction, or alternatively for failure to state a claim upon which relief can be granted, and to grant such other relief as is just and proper.

Dated: September 13, 2013

Michael K. Winston, Esquire
Florida Bar No. 051403
mwinston@carltonfields.com
Kristin A. Gore, Esquire
Florida Bar No. 059090
kgore@carltonfields.com
CARLTON FIELDS, P.A.
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL  33401-6149
Florida Bar No. 650331
Telephone:  (561) 659-7070
Facsimile:   (561) 659-7368

By: /s/ Kristin A. Gore
      Kristin A. Gore
      Florida Bar No. 059090

*Counsel for Defendant Wells Fargo Bank, N.A.*

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of September, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing system:

Albert H. Mickler, Esq.
5452 Arlington Expressway
Jacksonville, FL 32211
ahm-planman@juno.com
*Counsel for Plaintiffs*

Suzanne Barto Hill, Esq.
Kevin R. Gowen, Esq.
Rumberger, Kirk & Caldwell
Lincoln Plaza, Suite 1400
300 South Orange Avenue
Orlando, FL 32801
shill@rumberger.com
kgowen@rumberger.com
*Counsel for Defendant Ronald R. Wolfe &*
*Associates, P.L.*

/s/ Kristin A. Gore
Kristin A. Gore
kgore@carltonfields.com
Florida Bar No. 59090

18