## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

THOMAS A. TRAVER and
REGINA LIST TRAVER

      Plaintiffs,                           Case No.: 13-cv-00841-UATC-JRK

v

WELLS FARGO BANK, N.A. a/k/a
WELLS FARGO HOME MORTGAGE
and RONALD R. WOLFE and Associates,
P.L.,

      Defendants.

_____/

### TRAVERS' RESPONSE TO WOLFE'S MOTION TO DISMISS

      The Plaintiffs, THOMAS A. TRAVER and REGINA LIST TRAVER (Traver), respond to the Motion to Dismiss filed on behalf of Ronald R. Wolfe and Associates, P.L. (Doc. 11) (Wolfe) and state:

### MOTION TO DISMISS STANDARD

      Wolfe's Motion to Dismiss fails to note that the Court should  accept Plaintiffs' factual allegations as true.  Therefore, Traver notes a more accurate standard.   This Middle District has stated with respect to the Motion to Dismiss Standard:

> In evaluating whether to dismiss a complaint for failure to state a cause of action, the Court should accept the plaintiff's factual allegations as true and construe them in the light most favorable to the plaintiff. *In re: Bill Heard Enterprises, Inc.* *406 B.R. 98, 102 (Bankr. N.D. Ala 2009)*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face." *Ashcroft v Iqbal,* 129 S.Ct. 1937, 1949 (2009) ". . . A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v Iqbal,*

129 S.Ct. at 1949 . . . In other words, the relevant question for the purposes of a motion to dismiss for failure to state a claim is "whether assuming the factual allegations are true, the plaintiff has stated a ground for relief that is plausible." *Ashcroft v Iqbal*, 129 S.Ct. at 1959

*Esfahani v Venus, 2010 Bankr. LEXIS 3378*3*
*(Bankr. M.D. Fla., September 22, 2010)*

## THE ROOKER-FELDMAN DOCTRINE IS NOT APPLICABLE

Travers' Complaint against Wolfe is based upon a breach of contract formed after the Final Judgment that had been entered by the State Court. Therefore, Wolfe's *Rooker-Feldman Doctrine* argument is incorrect.

Ronald R. Wolfe and Associates, P.L. (Wolfe) has filed a Motion to Dismiss based, in part, upon the *Rooker-Feldman Doctrine*. In its Argument, Wolfe presents this Court with a series of misconceptions: "The Amended Complaint arises from a 2008 residential foreclosure action filed by Wells Fargo, N.A. . . . The only Complaint injury was the State Court's Final Judgment in Foreclosure . . . (Plaintiffs') federal claims can only succeed to the extent that the Florida Court erred." (Wolfe Motion to Dismiss at p 1, 8) These statements are incorrect. Travers based their Amended Complaint upon the unquestioned fact that Wells Fargo and Wolfe breached a contractual relationship that had been formed <u>after</u> the State Court Final Judgment of Foreclosure.

Travers' Amended Complaint stated in part:

60. The Wells Fargo letter of January 24, 2013 attached to the Traver Motion for Approval of Modification Agreement (Exhibits 4, 5) constituted an offer from Wells Fargo that stated: "We can offer your client a plan that we hope is workable to both parties. . . ." The Wells Fargo letter of January 24, 2013 then listed the current mortgage payment terms and the proposed mortgage payment terms. The Wells Fargo letter also stated : ". . . The next step is to file a petition with the Bankruptcy Court to gain their consent to modify the first mortgage. . . . We will then remove any proof of claim in this case and process the modification as noted."

61. Traver accepted the offer contained in the Wells Fargo letter of January 24, 2013. Traver submitted a Motion for Approval of the Modification to the

2

United States Bankruptcy Court, Middle District of Florida.  Traver also obtained from the United States Bankruptcy Court an Order Granting Debtor's Motion for Approval of Modification Agreement (Exhibits 5, 6).

Therefore, the Wells Fargo offer was dated **January 24, 2013.**  Traver accepted the Wells Fargo offer when the Bankruptcy Court entered its Order Granting Debtor's Motion for Approval of Modification Agreement on **April 10, 2013.**  The State Court Foreclosure Judgment was entered on **April 5, 2013.**  As the Default Final Judgment was entered by the State Court, it was valid because Travers' acceptance of the Wells Fargo offer did not occur until January 10, 2013 when the Bankruptcy Court entered its Order Approving the Traver/Wells Fargo Modification Agreement. Therefore, Traver does not contest the validity of the Judgment.  Traver contests the fact that post-judgment, Wells Fargo and its agent breached the Modification Agreement that had been accepted on June 10, 2013.

The *Rooker-Feldman Doctrine* is a narrow doctrine that only applies to attempts to appeal a State Court judgment. *Vasquez v Y, II Shipping Company*, 692 F.3d 1192, 1195 (11thCir. 2012). In *Vasquez v Y, II Shipping Co.*, the Eleventh Circuit noted that the *Rooker-Feldman Doctrine* precludes Federal District Courts from becoming a Court of Appeals for State Court decisions. However, *Vasquez's* Federal Court lawsuit did not seek appellate review of the State Court's decision that had applied Florida's Forum Non-Convenience Rules to the *Vasquez* Florida claim. Vasquez subsequently brought the same claims in Federal Court arguing that Federal Maritime Law applied to his case.  The District Court dismissed Vasquez's Complaint on the grounds that the *Rooker-Feldman Doctrine* was applicable.  Vasquez sought Appellate review of the District Court's Order that Federal Maritime Law did not apply to his case, an issue not resolved by the State Court. *Rooker-Feldman* did not prohibit Vasquez's District Court jurisdiction action because the Florida Court never addressed *Vasquez's* Federal Maritime Law issue that was asked to be resolved in the

3

District Court. *Vasquez at 1196.* Accord: *Watson v Lockette* 379 Fed. Appx 822, 826 (11thCir.

2010) In *Watson*, Watson filed a personal injury claim in the Georgia State Court. The Georgia State

Court ordered the personal injury action transferred to a different city in the State of Georgia.

Watson's deadline for appealing the transfer order eventually expired.   Watson then filed a 42

U.S.C.§1983 Complaint in the District Court.  Watson's District Court Claim alleged that the State

Court Judge and Clerk Mull had violated Watson's constitutional rights.   The District Court

dismissed Watson's Complaint concluding that it had lacked jurisdiction over Watson's Complaint

under the *Rooker-Feldman Doctrine*.  Watson appealed.   The Eleventh Circuit concluded that

Rooker-Feldman barred Watson's claim against the State Court Judge who had issued the State

Court transfer order.   However, as to the Clerk of the State Court, Watson had complained of an

injury caused by the *independent actions* of the Clerk's office employees in refusing to accept

Watson's appeal papers and then withholding the Citizen's Guide to Filing Appeals until the appeal

period expired.  Thus, as to the State Clerk Court, Watson was not complaining of an injury "caused

by the State Court Judgment itself." Rather, Watson's Complaint arose as a result of the actions of

the State Court Clerk's office employees in delaying the Appeal.  Thus, Watson's access to the

District Court against Clerk Mull was not barred by the *Rooker-Feldman Doctrine. Watson at 826.*

Again, *Sophocleus v State of Alabama Department of Transportation,* 170 Fed. Appx.

608(11thCir. 2005) (*Sophocleus II*) , Sophocleus' homestead had been condemned by an Alabama

Probate Court.  After numerous State Court appeals, Sophocleus refused to move.  Thereafter,

Alabama had filed a second State Court action which resulted in the State Court eviction of

Sophocleus from their property.  After moving from their property, Sophocleus settled the

condemnation proceeding and the Alabama Probate Court entered a Final Decree of Condemnation.

Later, Sophocleus filed an action in the District Court claiming that they did not receive relocation

4

expenses and other just compensation.  The District Court concluded that Sophocleus could not challenge the negotiated settlement of the State Court condemnation proceedings in Federal Court due to the *Rooker-Feldman Doctrine*.  Sophocleus appealed to the Eleventh Circuit.  The Eleventh Circuit affirmed the District Court's Summary Judgment in favor of Alabama *Sophocleus v Alabama*, 116 Fed. Appx. 246 (11thCir. 2004) (*Sophocleus I*).  Sophocleus then appealed to the Federal Supreme Court.  The Federal Supreme Court vacated the Eleventh Circuit's prior Opinion and remanded for further consideration in light of the Federal Supreme Court's Decision in *Exxon Mobile Corp. v Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L ed. 2d 454 (2005).  Upon remand, the Eleventh Circuit in *Sophocleus, II* observed that in *Exxon Mobile*, "The Court also noted that where the Plaintiff presents an *independent claim*, albeit one that denies a legal conclusion that a State Court reached in a case to which was a party then there is *jurisdiction* and State Law determines whether the defendant prevails under the principals of preclusion." *Sophocleus at 610*.  Therefore, in the *Sophocleus II* case, the Eleventh Circuit remanded to the District Court for consideration in light of the Supreme Court's Opinion in *Exxon Mobile*.

Interestingly, on remand, the District Court in *Sophocleus v Department of Transportation* 605 F. Supp.2d 1209(M.D. Ala. 2009) also rejected the *Rooker-Feldman Doctrine* and determined that it has jurisdiction to hear the Sophocleus' claim.  In so doing, the District Court considered the meaning of the "puzzling phrase": "inextricably intertwined."  The District Court in Sophocleus noted that the Supreme Court in *Exxon Mobile* did not specifically define the term "inextricably intertwined."  However, in conclusion the District Court stated: "In short, the alpha and omega for the Doctrine is that the case must be: (1) brought by State Court losers; (2) complaining of injuries caused by State Court Judgment; (3) rendered before the District Court proceedings commenced; and

(4) inviting District Court review and rejection of those judgments.   Those requirements were specifically outlined in *Exxon Mobile. Sophocleus v Department of Transportation at 1217.*

The District Court in *Sophocleus v Department of Transportation,* decided that *Rooker-Feldman* did not apply because, "the *Sophocleus* did not invite this Federal Court to review and reject the State Court Judgment, instead they invite this Court to honor the State Judgment . . . *Sophocleus v Department of Transportation, at 1218.*[1]  *Watson* and *Sophocleus* stands for the proposition that an independent claim in District Court that does not attack the State Court Final Judgment is not barred by *Rooker-Feldman.*  In this instant case, Traver does not attack the State Court Final Judgment.

In *Exxon,* the unanimous Supreme Court denounced the expansion of *Rooker-Feldman Doctrine* and expressly limited the Doctrine by confining it to cases that would be subject to the Doctrine as a result of the prior four factors. *Sophocleus v Alabama,* 605 F. Supp. 2d at 1215. Hence, many of the cases cited by Wolfe in its Brief at p 5,6, are irrelevant because of the 2005 *Exxon Mobile* decision limiting the application of the *Rooker-Feldman Doctrine.*

In summary, Travers' Complaint against Wolfe in this case is based upon their breach of the mortgage modification contract *after* the State Court Foreclosure Decision and before the Clerk's sale. The Traver causes of action arise from that post-judgment breach of contract. The breach of contract was not decided by the State Court.

---

[1] In *Sophocleus, II,* the District Court decided against Sophocleus on the issue of *res judicata* and the issue of collateral estoppel. But the *res judicata,* collateral estoppel and issue preclusion are not important to Traver because the determination of the issue regarding the breach of contract by Wells Fargo was not a necessary part of the Final Judgment against Traver in the earlier State Court litigation. *Sophocleus v Department of Transportation, District Court at 1219.*

## WOLFE'S AMENDED COMPLAINT STATES A CLAIM UNDER
## THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

In arguing that the Plaintiffs cannot state a claim under the Florida Consumer Collection Practices Act (Count Five First Amended Complaint), Wolfe again relies upon its false perception that "according to the allegations of Plaintiff's Amended Complaint RRW merely prosecuted the foreclosure. . . . RRW . . . It is only alleged to have made filings in the foreclosure" (Motion to Dismiss at p 13).

Actually, as previously stated, the foreclosure prosecution and judgment were perfectly valid until the entry of the Federal Bankruptcy Court's Modification Order. The Foreclosure Judgment was entered on April 5, 2013. The Federal Bankruptcy Court's Modification Order was entered on April 10, 2013 in which the Federal Bankruptcy Court stated that the claim filed by Wells Fargo Bank, N.A. was no longer valid. Hence, the Foreclosure Judgment was valid until the Bankruptcy Court's Modification Order was entered. At that time, Wolfe should have notified the State Court concerning the Federal Bankruptcy Court's Modification Order. The failure to disclose by Wolfe post-State Court Judgment, was the continuation of the enforcement of a debt that had been rendered invalid by virtue of the Federal Bankruptcy Court's April 10, 2013 Modification Order. This failure to disclose was specifically addressed in the Amended Complaint:

### COUNT FIVE
* * *

124.   This is a State Law claim against Wolfe P.L. based upon the Florida Consumer Collection Practices Act, Fla. Stat. §559.551 *et seq.* At all relevant times, Wolfe, P.L. was a "debt collector" as defined in Fla. Stat. §559.55(6). Wolfe P.L. identifies itself in telecommunications as a "debt collector" and in letters to consumers as a "debt collector."
* * *
134.   The Bankruptcy Court Order approving the Traver/Wells Fargo Modification Agreement had the effect of bringing the Traver account current with Wells Fargo and rescheduling the payment terms according to Wells Fargo's earlier letter of January 24, 2013.

7

135.    Wolfe P.L. was aware, or should have been aware, by actual or imputed knowledge that Wells Fargo had submitted to Traver a loan modification commitment letter dated January 24, 2013. There was pending in the United States Bankruptcy Court a Motion for Referral to Mortgage Modification Mediation served on **May 18, 2012.** Further, Wolfe P.L. was aware that a Motion for Approval of Modification Agreement between Wells Fargo Bank, N.A. and Traver was served on **January 29, 2013**.

* * *

139.    Furthermore, Wolfe P.L. continued to enforce the debt by not requesting relief from the Final Judgment pursuant to Fla. R. Civ. P. 1.540(b). Wolfe P.L. did not claim excusable neglect in the proper format and did not attach the Bankruptcy Court's Order Approving Modification. Wolfe P.L. failed to inform the Circuit Court in any way concerning the Bankruptcy Court's Order Approving the Modification.

140.    *Wolfe P.L.'s continuance of the foreclosure proceedings after April 10, 2013 was an effort to claim or attempt to enforce a debt.* Wolfe P.L. knew that the debt was not legitimate (because of the Bankruptcy Court Order). Wolfe P.L.'s allowing the foreclosure proceeding to continue was the assertion of the claimed legal right to collect a debt when Wolfe P.L. knew that the legal right did not exist because of the Bankruptcy Court's Order Approving the Traver/Wells Fargo Modification Agreement. Wolfe P.L.'s assertion of a claimed legal right when that right did not exist was a violation of Fla. Stat.§559.72(9). (Emphasis Supplied)

Therefore, the Travers are stating to this Court that the foreclosure notwithstanding, Wolfe committed a separate act to enforce the debt by not informing the State Court that the Federal Bankruptcy Court had entered the Mortgage Modification Order on April 10, 2013 that brought the mortgage payments current. For the purpose of clarity, Wolfe's inaction is separate from "RRW merely prosecuted the foreclosure" (Motion to Dismiss at p 13).

Wolfe's citations to "debt collector" statutes and cases are irrelevant. The plain language of Fla. Stat.§559.72(9) only applies to "persons." Fla. Stat.§559.72(9) specifically states:

§559.72 prohibited practices generally.

In collecting consumer debt, no *person* shall:

* * *

(9)    claim, attempt, or threaten to enforce a debt when such *person* knows that the debt is not legitimate, or assert the existence of some other legal right when such *person* knows that the right does not exist. (Emphasis supplied)

The term "person" is not defined in the Florida Consumer Collection practices Act Fla. Stat.§559.55 *et seq*. Although the term "debt collector" is defined at §559.55(6). But the Florida Legislature did not use the term "debt collector" in connection with Fla. Stat.§559.72(9). The legislature used the term "person."

While the term "person" is not defined in Fla. Stat.§559.72(9)(2001), the term "person" is defined for the purposes of general application under Fla. Stat.§1.01(2013):

§1.01 Definition

In construing these Statutes and each and every word, phrase, or part thereof, where context will permit:

\* \* \*

(3)    The word "persons" includes individuals, children, firms, associations, joint ventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other groups or combinations.

Hence the word "person" is all inclusive of existing entities. The word "person" is not limited to "debt collectors." Where . . . the Statute's language is plain, the sole function of the Court is to enforce it according to its terms. *United States v Ron Pair Entrs.*, 489 U.S. 235, 241; 109 S.Ct. 1026, 1030; 103 L.Ed. 2d 290 (1989). Therefore, Wolfe's citations to Federal Debt Collection cases are irrelevant.

Wolfe also cites to *Warren v Countrywide Homes, Inc.*, 342 Fed. Appx 458 (11thCir. 2009) and other cases for the proposition that enforcement of a security interest such as a mortgage foreclosure falls outside of the ambit of the Federal Fair Debt Collection Practices Act. *Warren* was overruled by the Eleventh Circuit and *Reese v Ellis, Painter, Ratterree and Adams, LLP*, 678 F. 3d

1211 (11thCir. 2012) which made it apparent that an entity that regularly attempts to collect debts can be a "debt collector" even when that entity is also attempting to enforce a security interest. In *Reese*, the Eleventh Circuit observed that a debt represented by a promissory note is not the same as a security interest. With that distinction in mind, the Eleventh Circuit noted that communications can have dual purposes. The Ellis Law Firm could have sent their letter to Reese to give notice of a foreclosure. But the Ellis Law Firm did demand payment on the underlying debt. The Eleventh Circuit rejected the Law Firm's argument that any attempt to enforce a security interest would absolve debt collectors from liability. The practical result would be that the Fair Debt Collection Practices Act would only apply to efforts to collect unsecured debt. So long as a debt was secured, a lender or its law firm could harass or mislead a debtor without violating the FDCPA. "That can't be right. It isn't."(*Reese at 1218*) A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A "debt" is still a "debt" even if it is secured. *Reese at 1218.*

In *Birster v American Home Mortgage Servicing, Inc.,*, 481 Fed. Appx 579 (11thCir. 2012), the Eleventh Circuit followed *Reese v Ellis et al*, with *Birster v American Home Mortgage Servicing, Inc.* In *Birster v American Home*, the mortgage servicer attempted to collect the debt, pre-foreclosure, by harassing phone calls and sending "inspectors" to the Birster household. According to the Eleventh Circuit, Birster's allegations supported a conclusion that AHMSI had engaged in debt collection activity. Therefore, under the reasoning of *Reese*, AHMSI may be liable under the FDCPA even though it was also attempting to enforce a security interest *Birster at 583*. *Birster v American Home Mortgage* and *Reese v Ellis, et al*, involved extra judicial collection activity of a debt. Likewise, Traver complains in Count Five of their First Amended Civil Complaint that Wolfe, P.L. did not inform the State Court that the Bankruptcy Court had entered an Order approving the

10

Modification Agreement and that, "Wolfe P.L. continued to enforce the debt by not requesting relief from the Final Judgment pursuant to Fla. R. Civ. P. 1.540(b). Wolfe, P.L. did not claim as excusable neglect in the proper format and did not attach the Bankruptcy Court's Order Approving Modification. "Wolfe, P.L. failed to inform the Circuit Court in any way concerning the Bankruptcy Court's Order approving the Modification (First Amended Civil Complaint at para 138, 139.)

In other words, it was the extra-judicial decision of Wolfe, P.L. to withhold information from the State Circuit Court concerning the Bankruptcy Court's Modification Approval Order that had brought the mortgage debt current. Traver does not complain of pleadings filed during the foreclosure process. Traver complains about Wolfe's decision (conscious or unconscious) to refuse information concerning the Bankruptcy Court Modification Order to the State Court outside of the judicial process after the Foreclosure Judgment had been entered.

In summary, Wolfe's citations to "debt collector" cases are irrelevant. Fla.Stat §559.72(9) prohibits the enforcement of an illegitimate debt by a "person." Wolfe's case citations have been overruled by the Eleventh Circuit's emerging view that "debt collectors" are not excused from the Federal Fair Debt Collections Practices prohibitions simply because they are attempting to collect on a secured debt. In this case, Wolfe attempted to collect on a debt by failing to notify the State Court concerning the Bankruptcy Court's Modification Order entered after the State Court Judgment had been entered.

### TRAVERS' COUNT FOUR STATES A CAUSE OF ACTION AGAINST WOLFE FOR MALPRACTICE

Court Four of Travers' First Amended Civil Complaint sued Wolfe for malpractice. As specifically stated in Court Four, Traver alleged:

    105.    Prior to Traver filing his Chapter Thirteen case, Wolfe, P.L. and Wells Fargo entered into a representation contract as subsequently amended by separate

Case 3:13-cv-00841-UATC-JRK   Document 13   Filed 09/27/13   Page 12 of 21 PageID 318

correspondence between Wells Fargo and Wolfe P.L. (Collectively: "Contract"). Under the terms of the Contract, Wolfe, P.L. would represent Wells Fargo and/or its agent organization in the litigation of foreclosure action and representation of Wells Fargo and its agent organizations before the Federal Bankruptcy Courts. The representation contract further provided that Wolfe P.L. would cause a dismissal or postponement of the foreclosure action for the benefit of Wells Fargo if or when the mortgagor had brought the mortgage account current or if or when the mortgagor had obtained a Court Approval of a Mortgage Modification Agreement. Through supplemental letters, correspondence and/or agreements Wells Fargo and Wolfe P.L. agreed that it would <u>not</u> be proper for Wolfe P.L. to pursue mortgage foreclosures when there had been a modification order entered by the Bankruptcy Court and the mortgagors were current on their modification payments as a consequence of Court-ordered modification agreements.

\* \* \*

119.    Consequently, Wolfe P.L. breached its contract with Wells Fargo and injured the third party beneficiary (Traver) by not requesting relief from the Final Judgment pursuant to Fla. R. Civ. P. 1.540(b). Wolfe did not claim excusable neglect in the proper format and did not attach the Bankruptcy Court Order Approving Modification. This breach of contract caused damages to the third party beneficiary Traver.

\* \* \*

Wolfe misstates the issue when Wolfe alleges: the record clearly shows that the interest of Wells Fargo were in conflict with the interests of the Plaintiff during the foreclosure. (Wolfe Motion to Dismiss at p 10)

As previously (and continuously) stated: Traver does not contest the validity of the State Court Judgment. Nor does Traver contest Wolfe's right to obtain the State Court Foreclosure Judgment. Rather, Traver objects to Wolfe's enforcement of the State Court Foreclosure Judgment through the sale process. The Traver/Wells Fargo Modification was validated by the Federal Bankruptcy Court's Order Approving Modification dated April 10, 2013. After that time, the contractual interests of Traver and Wells Fargo were united because the Federal Bankruptcy Court's Order Approving Modification Agreement had invalidated the Claim Six filed by Wells Fargo (First Amended Complaint at Exhibit 6). According to the Amended Complaint, Wells Fargo had

previously entered into a contract with Wolfe that a dismissal or postponement of the foreclosure action would necessarily occur if a mortgagor had brought the mortgage account current or when the mortgagor had obtained a Court approval of a mortgage modification agreement. Consequently, Wolfe was obligated to the third party beneficiary (Traver) to dismiss the foreclosure complaint after the Judgment had been entered.

Wolfe is absolutely correct when he states: "There is an exception to this strict privity requirement where the Plaintiff is an intended third party beneficiary of the contractual relationship between attorney and client" (Motion to Dismiss at p 9). Courts have held that an attorney representing a client may be liable to a contemplated third party beneficiary of that representation. In *Consolidated Am. Ins. Co. v Hinton*, 845 F. Supp. 1515(D M Dist. Fla. 1994) A pesticide company accidentally sprayed Dursban in a residential community. Hinton was injured by ingestion of the pesticide. Hinton sued the pesticide company. Consolidated, the insurer of the pesticide company denied coverage. The pesticide company hired attorney Blunt for independent representation in the State Court. Subsequently, Hinton entered into a stipulation to settle with the pesticide company. The stipulation provided that Hinton would not attempt to enforce the judgment against the pesticide company. Eventually, the pesticide company initiated a State Court lawsuit against Consolidated to enforce the applicable insurance policy. Consolidated later filed a diversity of citizenship action in Federal Court. In the Federal Court action, Consolidated sued Blunt in Count III alleging that Blunt had acted collusively in settling the State Court lawsuit and that Consolidated was the contemplated third party beneficiary to the relationship between Blunt and the pesticide company. In Federal Court, Blunt filed a motion to dismiss Count III. The Federal Court denied Blunt's motion to dismiss. Based upon precedent, the Federal Court ruled that although an attorney is normally liable only to his client, the attorney could be liable to a third party if the judgment was

obtained by fraud.   Accord: *Walco Invs v Thenan*, 881 F. Supp 1576 (D Fla. 1995).   In *Walco v Thenan,* investors sued a law firm.   The law firm had provided investment advice and drafting of a private placement memorandum to investment funding companies.   Eventually, the business enterprise contemplated by the private placement memorandum collapsed.   The investors sued the law firm alleging that the law firm owed a duty to the investors.   The law firm moved to dismiss claiming that they had no duty to the investors to detect false or misleading statements in the private placement memorandum.   On the Motion to Dismiss, the plaintiff's complaint seeking liability for professional malpractice, the District Court noted that the plaintiffs conceded that there was no privity between the investors and the law firm.   However, with respect to a suit for professional malpractice there was a limited exception to the privity requirement which applied when "it was the apparent intent of the client to benefit a third party."   The exception was "not limited to but is most clearly exemplified in the area of will drafting."   The Federal Court ruled against the defendant law firm.   Accepting the plaintiff's allegations as true, "Where professionals know that people will rely upon their work product, the privity requirement is relaxed, and a duty of care is imposed." (As alleged by the plaintiffs.)   The District Court denied the law firm's motion to dismiss.

In summary, Traver has stated a cause of action against Wolfe for malpractice.   Although Wolfe represented Wells Fargo in the Foreclosure Complaint, once the contractual relationship between Wells Fargo and Traver was formed through the Bankruptcy Court Modification Approval, the Travers became the third party beneficiaries of the Agreement between Wolfe and Wells Fargo to dismiss foreclosure complaints when the mortgage had been brought current or there had been a Bankruptcy Court Order bringing the mortgage current.

## THIS DISTRICT COURT HAS SUBJECT MATTER JURISDICTION

In disputing subject matter jurisdiction, Wolfe's Motion to Dismiss continues the fiction: "Plaintiff's claims arise from the prosecution of a judicial foreclosure in State Court in Duval County, Florida" (Motion to Dismiss at p 5).   The Travers sued Wells Fargo on a breach of contract and on fraudulent misrepresentation (Amended Complaint Count One and Count Two) independent of the State Court Foreclosure Judgment.   The contract was created through the Bankruptcy Court's Order dated April 10, 2013 (Amended Complaint at Ex 6).   Travers also sued Wolfe based upon Wolfe's extra-judicial conduct in failing to notify the State Court, post-foreclosure judgment, of the Federal Bankruptcy Court's modification order which changed the due dates of the debt owed to Wells Fargo and eliminated Wells Fargo's bankruptcy claim.

Importantly, for jurisdictional purposes, the contract between Traver and Wells Fargo was formed in Federal Bankruptcy Court.   Wells Fargo had filed a Proof of Claim in the Federal Bankruptcy Court (Amended Complaint at Ex 3).   Filing a proof of claim submits the filing party to the jurisdiction of the Bankruptcy Court.   *Stanley v Student Loan Services, Inc.*, 273 B.R. 907 (Bankr. N.D. Fla. 2002).

Federal Law is further implicated under the Home Affordable Modification Program, the Treasury Department included a paragraph relevant to bankruptcy in its required outreach program:

**Borrowers in bankruptcy**

> Borrowers in active Chapter Seven or Chapter Thirteen bankruptcy cases must be considered for HAMP if the borrower, borrower's counsel or bankruptcy trustee submits a request to servicer. . . . The servicer and its counsel must work with the borrower or borrower's counsel to obtain any court and/or trustee approvals required in accordance with local court rules and procedures. Servicer should extend the trial period plan as necessary to accommodate delays in obtaining court approvals or receiving full remittance of the borrower's trial period payments when they are made to a trustee . . .

* * *

When a borrower in an active Chapter thirteen bankruptcy is in a trial period plan and the borrower has made post-petition payments on the first lien mortgage in the amount required by the trial period plan, a servicer must not object to confirmation of a borrower's chapter thirteen plan, move for relief from the automatic stay or move for dismissal of the Chapter Thirteen case on the basis that the borrower paid only the amounts due under the trial period plan, as opposed to non-modified mortgage payments.

* * *

(Supplemental Directive 10-02)

Additionally for jurisdictional purposes, the Federal Bankruptcy Court in the Middle District of Florida had special procedures for mortgage modification mediations *Local Rule 9019-2(J.)*:

### Mortgage Modification Mediations and other Specialty Mediations

When deemed necessary, the Court shall establish procedures, policies and necessary orders to deal with the mediation of emerging bankruptcy trends, such as residential mortgage modification.

More importantly, the Bankruptcy Court's Mortgage Modification Order in the Traver case specifically stated:

All parties are directed to comply with this Order and to engage in the mediation process in good faith. Failure to do so may result in the imposition of damages and sanctions. *(Exhibit 2 at p 4)*

Wells Fargo Bank, N.A. was the mediation agent for HSBC Bank, U.S.A., National Trust Co. (Ex 5; designating Wells Fargo Bank in the Certificate of Service of the Motion for Approval of Modification Agreement.)

Nevertheless, having subjected itself to the jurisdiction of the Federal Bankruptcy Court, Wolfe now asserts that all of Travers' Claims are State Law claims. Hence, according to Wolfe, this District Court does not have jurisdiction. In essence, Wolfe states that this District Court does not have Federal jurisdiction when it is presented with State Common Law claims that incorporate Federal Standards of Conduct formed by the Bankruptcy Court's Mediation Order. That question was answered in *Wigod v Wells Fargo Bank, N.A.,* 673 F.3d 547, 581(7thCir. 2012) when the

16

Appellate Court allowed State Law claims based upon HAMP structured standards of conduct.  As

the Eleventh Circuit stated:

> Finally, Wells Fargo insists that Wood's case cannot go forward because her allegations are "HAMP claims in disguise" and an "impermissible end-run around the lack of a private action in [the 2008 Act] and HAMP."

* * *

> The end-run theory is built on the novel assumption that where Congress does not create a private right of action for violation of a federal law, no right of action may exist under state law either.

* * *

> To appreciate the novelty of Wells Fargo's argument, consider the many cases in which the Supreme Court has confronted issues of subject matter jurisdiction presented by state common-law claims that incorporate federal standards of conduct, without so much as a peep about whether state law may do so without being preempted.  See, e.g., *Grable & Sons Metal Products Inc. v Darue Engineering & Mfg.*, 545 U.S. 308,312,311,315;125 S.Ct. 2363; 162 L.Ed. 2d 257 (2005) (quiet title action brought under state law"turn[ed] on substantial question of federal law" because "the interpretation of the notice statute in the federal tax law" was an "essential element of [plaintiff's] quiet title claim); *Merrill Dow Pharmaceuticals, Inc. v Thompson*, 478 U.S. 804, 805-07; 106 S.Ct. 3229, 92 L. Ed. 2d 650 (1986) (violation of federal labeling requirements in the Federal Food, Drug, and Cosmetic Act create a rebuttable presumption of negligence and proximate cause under state tort law); *Moore v. Chesapeake & Ohio Ry.,* 291 U.S. 205, 214-15, 54 S.Ct. 402; 78 L. Ed. 755 (1934) (Kentucky worker's compensation statute provided that employer railroad's violation of Federal Safety Appliance Acts would constitute negligence per se under state law.) *Wigwod at 581, 582*

* * *

Indeed, in *Grable & Sons Metal Products, Inc. v Darue En'g & Mfg* 545 U.S. 308; 125 S.

Ct. 2363; 162 L. Ed. 2d 257 (2005) involved a quiet title action that was brought in State Court and

removed to Federal Court by the State Court defendant.  The quiet title action was initiated because

*Grable's* State Court action complained that Darue's title was invalid since the Internal Revenue

Service had failed to give Grable notice of the IRS sale by which Darue acquired title.  The Federal

Supreme Court granted Certiorari on the jurisdictional question.  In affirming, the Federal Supreme

Court stated that "It is plain that a controversy respecting the jurisdiction and effect of the federal

17

laws is involved and is sufficiently real and substantial." Historically, the Federal Court stated: "One

only needed to consider the treatment of federal violations generally in garden variety state tort law.

The violation of federal statutes and regulations is commonly given negligence per se in state tort

proceedings . . . The breach of a federal statute may support a negligence per se claim as a matter of

state law." *Grable at 316, 318, 319. Accord: Iberia Bank v Beneva, 41-1, LLC,* 701 F.3d 916, 919

(11thCir. 2012). In *Iberia Bank v Beneva,* the Eleventh Circuit simply stated:

> This Court has jurisdiction over this case under 28 U.S.C.§1331. In a
> declaratory judgment action, the Court normally looks to whether the cause of action
> anticipated by the declaratory judgment plaintiff arises under federal law . . .
> Although the anticipated cause action here is a state contract claim, resolution of the
> dispute requires interpretation of a substantial federal issue. . . . State created causes
> of action can sometimes arise under federal law when the potential state court
> plaintiff's right to relief necessarily depends on a resolution of a substantial question
> of federal law . . . Even if the federal issue would not appear on the face of a well-
> pleaded complaint by *Beneva,* but rather as a defense by Iberia Bank, Iberia Bank
> likely would bring its own state contract claim, which would necessarily raise a
> federal question. ( *Iberia Bank v Beneva 919 at Footnote No. 4*)

This is the reason that the Travers notified this District Court in its First Amended Civil

Complaint concerning the factual background which related the TARP and HAMP statutory and

regulatory guidelines. This is also the reason that Travers informed this District Court concerning

the funds that Wells Fargo had accepted from the Federal Government for participating as a servicer

in the HAMP program (Amended Complaint para 7 - 30).

Recently, the Federal Supreme Court decided *Gunn v Minton,* 133 S.Ct. 1059; 185 L.Ed. 2d

72 (2013).

In *Gunn v Minton,* the Federal Supreme Court succinctly stated the *Grabel* criteria:

> Does the "state law claim necessarily raise a stated issue, actually disputed
> and substantial, which a federal forum may entertain without disturbing any
> congressionally approved balance of federal and state judicial responsibilities"?
> . . . That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1)
> necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution

18

in Federal Court without disturbing the federal state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a "serious financial interest in claiming the advantages thought to be inherent in a federal forum" which can be vindicated without disrupting Congress's intended division of labor between state and federal courts. *Gunn v Minton at 1065.*

In this instant case, Travers' Amended Complaint:

(1) necessarily arose a result of a HAMP modification agreement that was proposed and accepted through the Federal Bankruptcy Court process. The Traver claim finds its origin in federal law; (2) the effect of the Modification Order is actually disputed as evidenced by the Motion to Dismiss the First Amended Complaint filed by both Wells Fargo and Wolfe; (3) the claim is substantial in a relevant sense to the federal system as a whole. The importance of the HAMP program/regulations is set out in Paragraphs 7 - 30 of the First Amended Civil Complaint. (Wells Fargo Bank N.A. accepted $25B in funds from the United States Government as a part of TARP. . .)(First Amended Complaint at para 20, 21.)    More importantly, the HAMP mediation process is significant to Federal Bankruptcy Courts in the Middle District of Florida. On January 21, 2013, an administrative order was entered by the Chief United States Bankruptcy Judge which stated in part:

> The Bankruptcy Court for the Middle District of Florida is a national leader in using mediation to assist parties modify residential mortgages.  The Court perceives the need to expand the panel of qualified mediators. . . ." (Administrative Order FLMB-2013-3)

(4)    The claim meets the appropriate balance of federal and state judicial responsibilities. Travers' claim is founded upon state law causes of action. As the Seventh Circuit stated in *Wigod v Wells Fargo Bank, N.A. at p 580*:

> Treasury's own HAMP director states that the servicers must implement the program in compliance with state common law and statutes . . . This would be an odd

19

provision if treasury had anticipated that HAMP would preempt state law claims especially ones that mirror its own directives.

In summary, this District Court has federal-questioned jurisdiction over state law claims that implicate a significant federal issue under the criteria stated in *Grable & Sons v Darue Eng.,* 545 U.S. 308.

## CONCLUSION

The Travers' First Amended Civil Complaint withstands the Motion to Dismiss filed by Wolfe. Consistently, throughout his Motion to Dismiss, Wolfe falsely operates under the assumption that Traver is attempting to re-litigate the foreclosure case. This is incorrect. The Travers acknowledge the validity of the State Court Judgment. However, the Travers state to this Federal District Court that the Traver/Wells Fargo contract was formed on April 10, 2013 after the State Court Foreclosure Judgment. Nevertheless, Wolfe continued to attempt to collect the Traver debt because Wolfe withheld the Traver/Wells Fargo contract from the State Court.

The Travers respectfully request this Federal Court to deny Wolfe's Motion to Dismiss.


DATED this 27th day of September 2013.


_____

ALBERT H. MICKLER
Trial Attorney for Traver

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy hereof was furnished to the following parties by CM/ECF electronic transfer; and to their personal email addresses as indicated; all the foregoing on this 27th day of September 2013.

Ronald R. Wolfe & Associates, P.L.
c/o Rumberger, Kirk & Caldwell
P O Box 1873
Orlando, FL 32802
Suzanne Barto Hill Esquire
shill@rumberger.com
Kevin R. Gowen, Esquire
kgowen@rumberger.com

and to:

Wells Fargo Bank, N.A.
c/o Carton Fields, P.A.
525 Okeechobee Blvd Suite 1200
West Palm Beach, FL 33401
mwinston@carltonfields.com
Kristin A. Gore, Esquire
kgore@carltonfields.com

Law Offices of Mickler & Mickler

ALBERT H. MICKLER
Florida Bar No. 168960
Trial Attorney for Travers
5452 Arlington Expressway
Jacksonville, Florida 32211
(904) 725-0822
Fax: (904) 725-0855
Email: ahm-planman@juno.com